UNITED STATES *v*. GEO. E. WHITE.

SAME *v*. WM. P. WHITE.

SAME *v*. JOHN P. WHITE.

SAME *v*. TUTTLE and others.

*(Circuit Court, D. California. July 30, 1883 )*

1. JURISDICTION—FRAUD.
   The United States courts have jurisdiction to vacate a patent to lands, in a proper case, on the ground of fraud.

2. FRAUD IN PROCURING PATENT.
   The frauds for which courts will set aside a patent, granted by the United States in the regular course of proceedings in the land-office, are frauds extrinsic or collateral to the matter tried and determined, upon which the patent issued, and not fraud consisting of perjury in the matter on which the determination was made.

3. PERJURY AND FALSE TESTIMONY.
   · Perjury and false testimony in the proceeding, by means of which a patent is secured by fraud, is not fraud extrinsic, or collateral to the matter tried and determined in the land-office, within the meaning of the rule, and a patent will not be set aside on that ground alone.

4. PERJURY—INJURY.
   Where no pecuniary injury to the United States is shown by the bill, and it does not appear that there is any other right in the land against the government, whether a court of equity should set aside a patent obtained on false testimony, if otherwise proper, *quære*.

5. RETURN OF PURCHASE MONEY.
   Where the United States files a bill to set aside a patent, on the ground that it was obtained upon false testimony, it should at least offer to return the purchase money paid by the patentee for the land.

6. EQUITY.
   When the United States comes into a court of equity asking equity like a private person, it should do equity.

7. SAME—FORFEITURE.
   Courts of equity never enforce penalties or forfeitures.

8. FORFEITURES.
   If the United States desires to enforce the penalties and forfeitures imposed by section 2262 of the Revised Statutes, for obtaining a patent to land upon false affidavits, it must do so by a proper proceeding at law, where the party charged will be entitled to a trial of the charge by a jury.

In Equity.

*A. P. Van Duzer*, fo. the United States.

*L. D. Latimer* and *Barclay Henley*, for defendants.

SAWYER, J. The first of these cases, *U. S.* v. *Geo. E. White*, is a bill in equity to vacate a United States patent, issued to the defendant on the ground that it was obtained upon false and fraudulent affidavits and proofs, made under the pre-emption laws. It is alleged that on May 6, 1876, the defendant filed a declaratory statement under the pre-emption laws upon a quarter section of land

situate in Humboldt county, described in the bill, and an affidavit stating that he had settled upon the land on November 5, 1873, and resided thereon ever since; that he had cultivated a portion as a garden, built a fence around about an acre, and built a house 9 by 12; that the improvements were of the value of $100; and that he was not the owner of 320 acres of land elsewhere. It is further alleged that he paid the sum of $200, and thereupon, and upon the making of said proofs, a certificate of purchase, in due form, was issued to said defendant; and afterwards, in pursuance of said certificate of purchase, a patent was issued on December 13, 1876. It is further alleged, *upon information and belief*, that said affidavits and proofs were false; that defendant did not make the settlement as stated; did not reside upon said lands; and that he did own 320 acres of land elsewhere. And on the grounds of these false representations and proofs the complainants ask that the patent be vacated and canceled, and that the money paid be adjudged forfeited to the United States.

There are numerous cases wherein the supreme court of the United States has said, in general terms, that a patent might be vacated for fraud on a bill of equity filed by the United States; as *Moore* v. *Robbins*, 96 U. S. 533; *Shepley* v. *Cowan*, 91 U. S. 330, and numerous others too familiar to require citation. There can, therefore, be no question as to the jurisdiction of the court to entertain such a bill where a proper case is presented. But it was never determined what kind of fraud, or in what form perpetrated, would furnish a proper case for the relief sought in this case, till the cases of *U. S.* v. *Flint* and *U. S.* v. *Throckmorton*, in this court, 4 Sawy. 51–53, affirmed in *U. S.* v. *Throckmorton*, 98 U. S. 68. These were cases wherein a petition was filed under the act of 1851, before the board of land commissioners, for confirmation of a Mexican grant, which had been confirmed. It was alleged in the bill that the grant presented was a fraud; that it had been fabricated in Mexico after the transfer of California to the United States; that the fraud was concealed from the government officers and the board of land commissioners; and that the confirmation was obtained upon false and perjured testimony. On these grounds it was sought to vacate the patent in the first case, and the confirmation in the second, and annul the titles. But the court decided that the confirmation could not be vacated, on the ground that it was obtained wholly upon false and perjured testimony, or for the palpable frauds alleged. The court held (affirming the views expressed by the circuit court in 4 Sawy. 51–53) that the frauds for which the judgments of tribunals could be impeached, are "frauds extrinsic or collateral to the matter tried by the first court," and do not extend "to a fraud in the matter on which the decision is rendered." Said the court, after citing and commenting on the authorities:

" We think these decisions establish the doctrine on which we decide the present case, namely, that the acts for which a court of equity will on account

of fraud set aside or annul a judgment or decree, between the same parties, rendered by a court of competent jurisdiction, have relation to frauds extrinsic or collateral to the matter tried by the first court, and not to a fraud in the matter on which the decree was rendered.

"That the mischief of retrying every case in which the judgment or decree rendered on false testimony, given by perjured witnesses, or on contracts or documents whose genuineness or validity was in issue, and which are afterwards ascertained to be forged or fraudulent, would be greater, by reason of the endless nature of the strife, than any compensation arising from doing justice in individual cases." 98 U. S. 68.

The same rule was adopted in *Vance* v. *Burbank,* which also went up from this circuit, and the principle applied to the decision on a question of residence and of fraud decided by the United States landoffice, where one private party sought to control, for his own use, the title granted to another, upon alleged frauds practiced while obtaining the patent. Said the court, by the chief justice :

"The appropriate officers of the land department have been constituted a special tribunal to decide such questions, and their decisions are final to the same extent that those of other judicial or *quasi* judicial tribunals are.

"It has also been settled that the fraud in respect to which relief will be granted in this class of cases must be such as has been practiced on the unsuccessful party, and prevented him from exhibiting his case fully to the department, so that it may properly be said there has never been a decision in a real contest about the subject-matter of inquiry. False testimony or forged documents even are not enough, if the disputed matter has actually been presented to or considered by the appropriate tribunal. *U. S.* v. *Throckmorton,* 98 U. S. 61; *Marquez* v. *Frisbie, supra.* The decision of the proper officers of the department is in the nature of a judicial determination of the matter in dispute.

"The operative allegation in this bill is of false testimony only. * * * No fraud is charged on the register and receiver, or on the heirs of Perkins in respect to the keeping back of evidence." *Vance* v. *Burbank,* 101 U. S. 519.

Thus the decisions of the land-office on applications for patents were put upon the same footing as judgments and decisions of courts and other tribunals like the board of land commissioners. The only difference between this case and the others is, that in the first, the United States, and, in the other, the complainant, actually appeared— the United States not appearing—and were heard, while in this, the United States did not formally appear as a contestant. But the principle is the same, only the mode of proceeding being different. In the *Flint* and *Throckmorton Cases,* the claimant, under his grant, the treaty with Mexico, and the statutes of the United States, petitioned the board for a confirmation of his grant. In this, the purchaser, under and in conformity to the statutes, applied to the land-office for leave to purchase, as did the party in *Vance* v. *Burbank,* and the land-office, representing the United States, in due form heard the proofs and determined the question of the right to purchase. In *Vance* v. *Burbank* the complainant intervened in fact, as he had a right to do under the law, and contested the right of his opponent.

But the United States was not a party in any sense other than as a party in this case. So, in the present case, anybody claiming an adverse interest had a right to intervene, but nobody seems to have done so. The proceeding was in the nature of a proceeding *in rem*, of which everybody takes notice. The hearing was regularly had, and decided in favor of the applicant, White; and the only fraud, if any there was, was "in the matter on which the decision was rendered," and not "extrinsic or collateral to the matter tried" and determined in the land-office. The action of the land-office is judicial in its nature. *Smelting Co.* v. *Kemp*, 104 U. S. 640. I can perceive no good reason why the principle should not apply to this case as well as to the others, and especially to the case of *Vance* v. *Burbank*. That is the logical result of the principle established by the decisions cited, and I think the principle sound, and, upon the whole, safe. Again, it is a principle that, with reference to private parties, a court of equity will not grant relief against a fraud, unless it appears that some damage or injury has been sustained by reason of the fraud; for "courts of equity do not, any more than courts of law, sit for the purpose of enforcing moral obligations or correcting unconscientious acts which are followed by no loss or damages." 1 Story, Eq. Jur. 203. And when the United States enters the court as a litigant, "* * * it stands upon the same footing with private individuals." *U. S.* v. *Throckmorton*, 4 Sawy. 43.

It does not appear that the United States has been pecuniarily injured by the alleged fraud. No injury or damage is alleged, or in any way shown. The land was for sale to any duly-authorized preemptioner, at $1.25 per acre. Defendant paid the full amount of the purchase money, and it went into the United States treasury. The government got all that it would have obtained from any other party. It does not appear that anybody else had any rights, or wanted to purchase, or that the United States was under any obligation to patent the land to any other person. There is no possible pecuniary injury to complainant. The most that can be said is that a principle of public policy was violated, and thereby a moral wrong resulted by reason of the legal disqualification, under the pre-emption act, of defendant to purchase. But the wrong was only *malum prohibitum*, not *malum per se*. It is by no means clear that the demurrer ought not to be sustained on this ground, but it is unnecessary to so decide now, for, in my judgment, it is not a case to be taken out of the rule established in the cases cited of Throckmorton and Vance. In view of the notorious liberality in favor of purchasers, not to say looseness, with which the pre-emption laws have, ever since their adoption, been administered all over the western states, to relax the rules referred to in the authorities cited, especially where no actual pecuniary damage or injury has resulted either to the government or private parties, and "retry every case in which" the action of the land-office, as well as "judgments or decrees rendered on false testi-

mony given by perjured witnesses, or on contracts or documents whose genuineness or validity was in issue, and which are afterwards ascertained to be forged or fraudulent," would open a Pandora's box of evils "far greater than any compensation arising from doing justice in individual cases." It would open the door to any party stimulated by malice, or other unworthy motive, who could, upon *ex parte* and false statements, obtain the ear of the attorney general to promote suits in the name of the United States, to the great vexation of honest, as well as dishonest, pre-emptors, and to the great detriment of the public peace and prosperity.

Again, the claim is stale. Although statutes of limitation do not run against the government, yet the staleness of the claim may be taken into consideration in determining the question whether a court of equity should interfere and grant relief where the United States, as well as a natural person, is a complainant. When the United States comes into a court of equity as a suitor, it is subject to the defenses peculiar to that court. *U. S.* v. *Tichenor,* 8 Sawy. 156; [S. C. 12 Fed. Rep. 449;] *U. S.* v. *Flint,* 4 Sawy. 58–9; *Badger* v. *Badger,* 2 Wall. 94; *Stearns* v. *Page,* 7 How. 829. Under the state law this suit, if between private parties alone, would be barred within three years. *Manning* v. *San Jacinto Tin Co.* 7 Sawy. 430; [S. C. 9 Fed. Rep. 735.] Six years elapsed between the issue of the patent and the filing of the bill, and no averment is made to show that the fraud was not discovered, or by the exercise of ordinary diligence in the land-office might not have been discovered, immediately after its consummation.

The money received is retained, and no tender appears to have been made, nor is any offer to refund the money made in the bill. The United States, like an individual, when it comes into court and demands equity, must do equity, or at least offer to do equity. It has received the full value of the land in money—the same amount that it would have received had the land been sold and patented to an admittedly qualified purchaser. It cannot keep the money, and, in a court of equity, demand and receive a return of the land.

To meet this point, and, as a basis for a decree for forfeiture of the money as a part of the relief demanded in the bill, the United States attorney relies on section 2262, Rev. St., which provides that "if any person taking such oath swears falsely in the premises, he shall forfeit the money which he may have paid for such land, and all right and title to the same." This is highly penal, and the only remedy, or rather punishment, other than an indictment for perjury, that appears to be provided by law for the wrong sought to be redressed. But the United States has come into the wrong forum to enforce this penalty. "It is a universal rule in equity never to enforce either a penalty or forfeiture." 2 Story, Eq. Jur. §§ 1319, 1494, 1509. So a bill of discovery will not lie in a case which involves a penalty or forfeiture. Id. As an answer on oath is not

waived, this bill is, in that particular, a bill of discovery, and demurrable on that ground also. If the United States desires to enforce the penalties—the forfeiture of the money paid and the land patented—provided for in section 2262, Rev. St., cited, it must proceed in some appropriate mode at law, where the defendant will be entitled to a trial by a jury of the question as to giving false testimony.

In my judgment the demurrer should be sustained and the bill dismissed; and it is so ordered.