Motion to dismiss appeal denied April 24; rehearing denied May 22;
argued September 12; affirmed October 2, 1934

# STATE ex rel. SECURITY SAVINGS & TRUST CO. ET AL. *v.* SCHOOL DISTRICT No. 9 OF TILLAMOOK COUNTY ET AL.

### (31 P. (2d) 751, 36 P. (2d) 179)

274

*Botts & Ebinger, Geo. P. Winslow,* and *E. J. Claussen,* all of Tillamook, and Oscar Hayter, of Dallas, for the motion.

*McCamant, Thompson & King,* of Portland, opposed.

RAND, C. J. This is a motion by respondents to dismiss the appeal. The action in which the judgment appealed from was taken is a quo warranto action that was brought in the name of the state on the relation of certain landowners to have School District No. 9 in Tillamook county declared to be illegal and void in so far as the boundaries of the district include the lands of the relators. The action was commenced by the filing of a complaint signed by the district attorney in his official capacity. After its commencement, the district attorney objected to any further prosecution of the action and moved to dismiss the proceeding. That motion was denied and the cause was then tried before the Honorable George R. Bagley, circuit judge, who entered a decree holding that the inclusion of the relators' lands within the boundaries of the district was

illegal and void but that the relief prayed for could not be granted for the reason that the action was barred by the statute of limitations. From this decree the relators appealed, but the district attorney refused to sign the notice of appeal or to authorize the same to be taken, and his failure to so act constitutes the sole ground for the motion.

██ The common-law writ of quo warranto and the proceedings by information in the nature of quo warranto have been abolished in this state by statute, but the same common-law remedies, except as changed by the statute, may now be had in an action at law brought pursuant to the provisions of chapter 6, title V, of the code which provides the procedure to be followed in the action. Under the express provisions of that chapter, all actions brought thereunder must be maintained in the name of the state and shall be commenced and prosecuted by the prosecuting attorney of the district where the same are triable. An examination of these statutes will show that there are two general classes of quo warranto actions provided by the code. The first class embraces those cases in which the interest is public and the private interest, if any, is only incidental to the main relief sought in the action. The second class embraces those cases in which there is both a public and a private interest. The first class of cases includes actions to set aside a corporate organization, whether public or private, where it was procured by some fraudulent suggestion or concealment of a material fact by the persons incorporated or with their knowledge and consent, and can be brought only by order of the governor (section 5-602, Oregon Code 1930) ; actions to annul a private corporate character or the existence of such corporation which can be

brought only by leave of the court (section 5-603); and actions to vacate or annul letters patent issued by the state (section 5-605).

In all actions embraced within the first class, the whole purpose of the action is to protect the public from an invasion of its rights by the defendant. In that class of cases the only rights and interests sought to be enforced are public in their nature and pertain to the public as a whole and not to any individual member of the public. From this it naturally follows that the action in cases of that kind is a state action and must be commenced on the information of the district attorney who is the law officer of the state.

As was said in *State ex rel. v. Douglas County Road Co.*, 10 Or. 198, by Mr. Justice WALDO speaking for the court:

"Therefore, when, as in the case before us, the district attorney files a quo warranto information in a distinctly state action, he has as much the sole control over it as the attorney general would have in a like case at common law. A relator cannot be a party to the proceeding—is a mere stranger—and if his name is put in the information, it is surplusage."

Under that decision, and it is the unquestioned law of this state, in quo warranto informations filed by the district attorney in cases of the first class, that is to say under sections 5-602, 5-603 and 5-605 of our Code, the district attorney has the sole control over their prosecution, both in the circuit court and upon an appeal to this court, and there can be no appeal in a case of that kind unless taken by the district attorney or by his duly authorized deputy, or under their direction.

In cases of the class to which we are now referring, the state is the real party in interest and must act, if at all, through its law officer who, under our statute,

is the district attorney of the district where the action is triable. Hence, in all such cases, except where the district attorney acts on the direction of the governor or by leave of the court, the question of whether the action shall be commenced or be prosecuted to a final determination is a matter solely within the discretion of the district attorney.

■ This action, however, is not of that class. It was brought under section 5-604, Oregon Code 1930, on the relation of private parties who were seeking to enforce a private interest. That section provides that an action at law may be maintained in the name of the state upon the information of the prosecuting attorney or upon the relation of a private party. It was expressly held in *State ex rel. v. Stevens,* 29 Or. 464 (44 P. 898), and again in *State ex rel. v. Cook,* 39 Or. 377 (65 P. 89), that, where the action is brought in the name of the state upon the relation of a private party and is signed by the district attorney in his official capacity, this is sufficient to comply with the provisions of this section, and in the latter case it was held that, where the complaint had not been signed by the district attorney although, at the time the action was brought on for trial, he caused his appearance to be noted upon the journal of the circuit court and showed that the case had been commenced and was being prosecuted with his express consent, that alone was not sufficient to entitle the action to be maintained.

In the case at bar the complaint contained the signature of the district attorney in his official capacity and the action was brought with his consent and this, under the ruling of the two cases last cited, was sufficient to entitle the action to proceed to a final determination.

Section 5-607, Oregon Code 1930, provides:

"When directed by the governor, as prescribed in section 5-602, it shall be the duty of the prosecuting attorney to commence the action therein provided for accordingly. In all other actions provided for in this chapter it shall be the duty of the proper prosecuting attorney to commence such action, upon leave given where leave is required, in every case of public interest, whenever he has reason to believe that a cause of action exists and can be proven, and also for like reasons in every case of private interest only in which satisfactory security is given to the state to indemnify it against the costs and expenses that may be incurred thereby."

In *State ex rel. v. Cook,* supra, it was expressly held that in actions brought under section 5-604 in the name of the state either upon the information of the prosecuting attorney of the district where they are triable, or on the relation of a private party "in either case, it is made the duty of the prosecuting attorney to commence and prosecute the action".

Section 5-606 provides:

"* * * When the action is upon the relation of a private party, as allowed in section 5-604, the pleadings on behalf of the state shall be verified by such relator as if he were the plaintiff in the action * * *. When an action is commenced on the information of a private person, as allowed in section 5-604, having an interest in the question, such party, for all the purposes of the action, and as to the effect of any judgment that may be given therein, shall be deemed a coplaintiff with the state."

Under these and the provisions previously referred to, it seems clear that it was the intention of the statute in the cases embraced in section 5-604 to confer upon private persons the right to have their interests deter-

mined by the court whenever the district attorney has reason to believe that a cause of action exists and can be proved, and the required indemnity has been given, and, in such case, to make it the duty of the district attorney to commence and prosecute the action to a final determination, and that, although the statute makes the district attorney the sole judge of whether the action shall be commenced, it intended to confer no power upon him to arbitrarily refuse to bring an action in a proper case nor, after the action has been once commenced by him, to arbitrarily or capriciously prevent the parties from having their rights adjudicated. Hence we hold that it was not within the power of the district attorney, after he had once consented to the commencement of the action and had signed the complaint in his official capacity and permitted it to be filed, to thereafter arbitrarily block the further prosecution of an action of this nature where both public and private interests are involved, either by moving to dismiss the action where no legal grounds therefor exists or by refusing to join in an appeal which the co-plaintiffs of the state, in good faith, desire to take. Under our system of law no officer in the performance of the duties of his office can act arbitrarily or capriciously, nor will he be permitted to refuse to act in violation of any duty imposed upon him by statute. The law applicable to the questions involved upon this appeal is, we think, well stated in 51 C. J., p. 324, as follows:

"Generally speaking, the institution of a quo warranto proceeding or the making of an application for leave of court to institute it, in a case where such leave is necessary, is a matter within the discretion of the attorney-general or prosecuting attorney, and the proceeding cannot be instituted or maintained without his

consent. In a case which is of purely public interest and does not involve any private or individual right or grievance, the foregoing rules obtain to their full extent; the discretion of the attorney-general or prosecuting attorney is arbitrary and uncontrollable, and his refusal to act does not confer upon a private person a right to proceed. Also, in a case within a statute authorizing the attorney-general or state's attorney to institute the proceeding, or apply for leave of court to institute it, at the instance of private persons, if private rights or grievances are involved, the consent of the officer is essential, but he has no arbitrary and uncontrolled discretion; the only discretion vested in him is to determine whether the documents and evidence presented to him are in proper legal form and prima facie sufficient, and if they are, it is his duty to sign the petition and present it to the court.''

In *State ex rel. v. Fendall,* 135 Or. 142 (295 P. 194), this court refused to dismiss the appeal notwithstanding that the notice of appeal had not been signed by the district attorney. We think that a like ruling should be made in this case.

The motion, therefore, will be overruled.

---

Argued on the merits September 12; affirmed October 2, 1934

ON THE MERITS
(36 P. (2d) 179)

*W. Lair Thompson*, of Portland (McCamant Thompson & King, of Portland, on the brief), for appellants.

*H. T. Botts*, of Tillamook, and *Oscar Hayter*, of Dallas (Botts & Ebinger, George P. Winslow and E. J. Claussen, all of Tillamook, on the brief), for respondents.

KELLY, J.   As stated by Mr. Chief Justice RAND, in overruling defendants' motion to dismiss relators' appeal, this proceeding is based upon section 5-604, Oregon Code 1930.   Among other things, that section provides that an action at law may be maintained in the name of the state upon the information of the prosecuting attorney or upon the relation of a private party against the person offending when any person shall unlawfully hold or exercise any franchise within this state.

Relators contend that the exercise of control by defendants over certain portions of relators' lands for school purposes by levying taxes thereon for such purposes is unlawful.   Defendants seek to justify by reason of certain orders of the district boundary board of Tillamook county whereby said portions of relators' lands were added to and included within the limits of said defendant, School District No. 9 of said county.

Defendants also defensively plead the statute of limitations, laches, acquiescence and estoppel.

■ Relators urge that the orders of said district boundary board are invalid because in contravention of the statute requiring the county to be divided into convenient subdivisions to be known as school districts (sections 35-601 and 35-901, Oregon Code 1930), and requiring all school districts to be formed of contiguous territory (section 35-905, Oregon Code 1930). Relators insist that in respect to their lands, in said school district, said district is not a convenient subdivision; that their property is not contiguous to the other portion of said district; and that the addition to said school district of their lands was made only for the purpose of increasing the amount of taxes to be collected by said school district.

The major portion of relators' lands now in said School District No. 9 was added thereto by an order made March 8, 1912.

On April 5, 1912, a comparatively small portion included in the area of relators' lands added the month before was excluded from School District No. 9, and a different portion from any theretofore included, which was also comparatively small, was added thereto. By this order of April 5, 1912, a strip approximately 10 rods wide was taken from School District No. 1 and added to School District No. 9. This strip comprises the connection between district No. 9 as originally formed and relators' lands.

On September 10, 1921, an order again was made excluding a small portion and including a different portion of relators' lands. On April 14, 1922, an order was made adding a comparatively small portion of relators' lands to said district. On September 28, 1931,

approximately nine-sixteenths of a section of relators' lands, not theretofore included, were added to said school district. We avoid the prolixity of attempted greater exactitude and more specific description, because we think that inasmuch as the strip connecting relators' lands with the remaining part of said school district remained the same and the general form, location and condition of relators' lands in said district were unchanged, the same questions as to contiguity and convenience with respect to relators' lands attend and appear upon each of the orders above mentioned. In saying this, we are not unmindful that upon the advent of the railroad in 1911, most of the people, who had lived in the vicinity of relators' lands and upon them in said district, moved away leaving but a very few children, not more than half of a dozen of school age in that part of said district.

Since 1912 up to and including the year 1931, relators have paid the taxes on their lands in said School District No. 9, including the special taxes levied in said school district.

■ Upon the question of statute of limitations, defendants argue that the amendment of 1903, which changed the statute of 1862, merely restored the rule of the common law. The statute of 1862 subjected actions by the state to the bar of the statute of limitations. Our present statute, which comprises the amendment of 1903, is as follows:

"The limitation prescribed in this title shall not apply to actions brought in the name of the state, or any county, or other public corporation therein, or for its benefit, but causes of action that have heretofore become barred by virtue of any statutory provision are not intended to be revived hereby." Section 1-211, Oregon Code 1930.

We think that the amendment above quoted went further than merely to reinstate the common law rule. It plainly exempts from the statute actions brought in the name of the state to which class the case at bar belongs.

Relators urge that the defense of laches and acquiescence are available in suits of equity only, and that, inasmuch as the instant case is an action at law, those defenses cannot be interposed herein.

■ The writ of quo warranto is an ancient common law writ and remedy. The history of its origin is obscured in antiquity. It first appeared upon the English statute books in the statute 6 Edw. 1, known as the Statute of Gloucester. Quo warranto had its origin in the theory that all special privileges (franchises) which are conferred upon an individual or corporation and do not belong to the citizens of the county generally as a matter of common right are the gift or grant of the King.

When, therefore, it was claimed that such special privilege had been usurped without gift or grant thereof from the sovereign, or where the privilege so conferred was alleged to have been abused, or the conditions thereof had not been observed, a writ was issued at the suit of the crown requiring the party charged with the usurpation to appear and show by what warrant or authority he assumed to exercise the privilege thus challenged. It issued from a court of chancery: 51 C. J. 309-310, Subject, Quo Warranto, sections 2 and 3, and notes. Issuing from a court of chancery and commanding a return of a nature foreign to the writs of the courts of law, it follows that by the common law quo warranto was an authorized process for the assertion of a remedy in its nature equitable, namely, the disclosure by de-

fendant of the claim under which he exercises the franchise in question.

■ The statute of Oregon gives a remedy in lieu of the common law writ of quo warranto and calls that remedy an action at law. It is in truth merely a statutory proceeding for the exercise of the equitable right to compel disclosure as above mentioned, as well as to determine whether the franchise in question is being legally exercised.

In 1912, this court decided the case of *State ex rel. v. Port of Tillamook,* 62 Or. 332, 334 (124 P. 637, Ann. Cas. 1914C, 483), in which Mr. Justice BEAN, speaking for the court, said:

"It is seldom that laches are imputed to a state in a quo warranto action to test the legality of an incorporation where the rights of the public are involved."

The interval which had elapsed in that case was less than two years. Moreover, the language used by the learned and experienced jurist clearly implies that there are cases, though infrequently arising, where the state has been precluded by laches from maintaining quo warranto proceedings: *State v. Town of Mansfield,* 99 Mo. App. 146 (72 S. W. 471); *State v. Bailey,* 19 Ind. 452; *State v. Lathrop School District,* 314 Mo. 315 (284 S. W. 135); *State v. Missouri Utilities Co.,* 331 Mo. 337 (53 S. W. (2d) 394, 399, 89 A. L. R. 607); *State v. Kinkade,* 192 Iowa, 1362 (186 N. W. 662).

In *O'Leary v. Reiner,* 9 N. J. Misc. 950 (156 Atl. 120), the supreme court of New Jersey say:

"Although it may be conceded that lapse of time will not bar the state through its attorney general from successfully prosecuting a quo warranto proceeding where the rights of the state are involved, this doctrine has no application where the writ is sued out by a private relator. In such a case, unreasonable de-

lay on the part of the relator may properly preclude him from maintaining the proceeding.''

■ In 1918, this court decided the case of *State v. Hyde,* 88 Or. 1 (169 P. 757, Ann. Cas. 1918E, 688). There, in a characteristically exhaustive and scholarly opinion, Mr. Justice McCamant, speaking for the court, announces that this court is committed to the principle that the doctrine of laches is applicable to the state. He cites the cases of *State v. Warner Valley Stock Co.,* 56 Or. 283, 304 (106 P. 780, 108 P. 861) ; *United States v. White,* 17 Fed. 561, 565 (9 Sawy. 125) ; and *Commonwealth v. Bala Etc. Turnpike Co.,* 153 Pa. 47, 53 (25 Atl. 1105, 1106), and quotes from the case last cited as follows:

''Time, together with other elements, may make up a species of fraud, and estop even sovereignty from exercising its legal rights.''

The record discloses that in 1912, the defendants, school district, issued bonds in the sum of $35,000 from the proceeds of which a high school building was erected. In 1921, bonds were issued in the sum of $17,000 from the proceeds of which a gymnasium was erected. In 1923, a building was erected known as the Liberty School building at an expense of $97,000. In 1924, the amount of bonds outstanding was about $150,-000. In 1927, bonds were issued in the sum of $20,000; and another school building was erected at an expense of $72,000. At the time of the trial in the circuit court the outstanding bonded indebtedness of said district was approximately $59,000, which was offset by a sinking fund of approximately $26,000; and there was a warrant indebtedness of approximately $55,000. The warrants of said district are not marketable because of the pendency of this proceeding. To pay said bonds

and warrants said defendant, school district, depends entirely upon the taxes derived from the assessable property within said district.

■ We think that these circumstances evidence a reliance upon the course taken by relators in paying each year for 19 years the taxes levied upon their lands for the purposes of said defendant, school district, as a representation by conduct that said orders of the district boundary board were valid and that no question would be urged by relators as to their validity and regularity. Reliance is not justified where knowledge to the contrary obtains. In the case at bar, nothing is shown indicating that before the institution of this proceeding relators claimed or asserted that said orders were invalid. While the location, nature, form and other characteristics of relators' property were known, as yet, no holding of this court had been made to the effect that such facts invalidate and render nugatory the order enlarging said district to include such lands.

This court in speaking of "non contiguous" parcels as affecting the right of exemption as a homestead has said:

"* * * there are some cases, where the lots are connected by a private easement across the intervening land, in which the lots can be held to be contiguous, but the easement is an interest in the intervening land itself, and while such holdings seem to be pushing the doctrine of continuity to its extreme extent, yet in view of the benevolent purposes of the statute, it is probably a view that the courts might well acquiesce in." *Cabler v. Alexander,* 111 Or. 257, 271 (224 P. 1076).

■ In view of these circumstances, while the present contentions of relators, if seasonably urged, would have been very persuasive to this court, it cannot be said

that defendants, whose functions are administrative rather than judicial, had such knowledge that they were unwarranted in believing that said orders were valid and that relators would not question the validity thereof. Certainly the discretion vested by statute in the district boundary board is such that no unworthy motive should be ascribed by the school district or its officers to the district boundary board because of its efforts to divide the county into school districts as required by statute.

Moreover, granting or refusing leave to institute a quo warranto proceeding in jurisdictions, where leave of court must first be had, rests largely in the discretion of the court when the application is made. In exercising its discretion, the court may and should consider all the circumstances of the case, the motives of the relator in having the proceedings instituted, the time which has elapsed since the cause of complaint occurred and whether the public interest will be served by allowing the information to be filed; and it may refuse leave, or decline to entertain the proceedings upon considerations of public policy, interest or convenience or because of long, unexcused and prejudiced delay or acquiescence on the part of the person complaining; and in a proceeding brought for the benefit of the relator primarily, the court's discretion is much greater than where purely public interests are involved: 51 C. J. 328, section 27, and authorities cited in the note, Subject, Quo Warranto.

We think that in jurisdictions, such as ours, where leave of court need not be obtained before the filing of the action, no less discretion is vested in the court in its consideration of the case on its merits. In an early case, the supreme court of Michigan used the following language:

"Although there is no statute limiting the time within which proceedings of this nature shall be instituted, yet the court of King's Bench in England, has exercised a sound discretion in this respect, and refused to permit information to be filed, at the instance of private individuals, if there has been unreasonable delay in invoking its extraordinary interposition. When the information is filed by the attorney general, which may be done without a preliminary application to the court, that discretion will be exercised upon the hearing of the cause. This rule we think not only salutary, but reasonable; and it is to be applied to cases as they arise, according to circumstances, until the legislature, (as in England) shall deem it proper to prescribe some uniform rule on the subject." *People v. Oakland County Bank,* 1 Doug. (Mich.) 282, 286.

The same principle is announced in *State v. Town of Mansfield,* 99 Mo. App. 146 (72 S. W. 471).

Considerations of public policy include a regard for the educational system of the commonwealth. All popular governments must depend for their continuance upon the intelligence and intellectual attainments of their citizens. To reduce by 40 per cent the income from taxation of defendant, school district, after 19 years of dependence and reliance thereupon would seriously cripple and impair its efficiency and deprive the school population therein of the opportunity to equip themselves for the duties of citizenship.

The equitable nature of this proceeding renders advisory only and not conclusive on appeal the statements set forth in the judgment of the trial court to the effect that, in adding relators' lands to said school district, the district boundary board acted fraudulently.

Impelled by the views hereinabove expressed, we find that the learned and experienced trial judge arrived at a correct conclusion when he entered an order of dismissal herein, and such order is hereby affirmed.