Submitted on briefs September 3; affirmed September 17, 1946

# STATE ex rel. HALLGARTH *v.* SCHOOL DISTRICT NO. 23, UNION COUNTY et al.

(172 P. (2d) 655)

R. J. GREEN, Judge.

*W. F. Brownton,* of La Grande, and *George L. Anderson,* District Attorney for Union County, of La Grande, for appellant.

*Cochran and Eberhard,* of La Grande, for respondents.

ROSSMAN, J.

This is an appeal by the plaintiff from a judgment entered by the circuit court in favor of the defendants, School District No. 23 of Union County, its directors, its clerk and First State Bank of Elgin. The action was instituted by the State upon the relation of one Joe

Hallgarth, who is the owner of property situated in the school district. The relator claims that a consolidation order, which was entered June 14, 1945, by the Union County district boundary board, and which consolidated ten school districts into the defendant district, was not a valid order. Based upon that premise, he contends that the district and its officials lack lawful authority to pursue their functions. The action was submitted to the circuit court upon an agreed statement of facts as authorized by §§ 6-501 to 6-503, O. C. L. A. The parties agree that the action is *quo warranto* in nature. See §§ 8-801 to 8-815, O. C. L. A. Specifically, the appellant cites § 8-804, subd. 3, which reads as follows:

"An action at law may be maintained in the name of the state, upon the information of the prosecuting attorney, or upon the relation of a private party against the person offending, in the following cases: * * * (3) When any association or number of persons act within this state, as a corporation, without being duly incorporated."

In other words, the appellant challenges the validity of the defendant school district.

We quote from the agreed statement of facts:

"The relator demands judgment against the defendants that they be perpetually enjoined and restrained from transacting business as a consolidated school district, that the attempted consolidation of the outlying districts with the original School District No. 23 be declared void and of no effect, and that as to such lands and districts the defendant's directors and clerk be adjudged to be unlawfully usurping and exercising power and jurisdiction over these districts, * * *."

The circuit court found that the consolidation was effected in the manner permitted by law and granted judgment in favor of the defendants.

Before the entry of the attacked consolidation order the boundaries of School District No. 23 were virtually the same as those of the city of Elgin. It was a school district of the third class as that term is defined in § 111-802, O. C. L. A. The nine other school districts which were consolidated with No. 23 by the order of June 14, being Nos. 14, 26, 29, 36, 45, 51, 59, 64 and 67, were also third class districts. The parties refer to them as the outlying districts. The number of school children residing in each of them was less than in the Elgin district, but after all ten were united into the consolidated district the latter's school population was in excess of two hundred and it was, therefore, a district of the second class (§ 111-802, O. C. L. A.).

In April of 1945 the Elgin school facilities, with the exception of the gymnasium, were destroyed by a fire and thereupon a proposal was made to consolidate the ten districts.

As the result of an election held June 1, 1945, the district boundary board (§ 111-401, O. C. L. A.) entered the attacked order. It united into one the aforementioned districts and entitled it Consolidated School District No. 23. Chapter 49, Oregon Laws of 1943, authorizes the consolidation of "contiguous school districts" and delineates the procedure which must be followed in their consolidation. The appellant does not challenge the personnel of the Union County boundary board, the votes which were cast June 1, 1945, the form of the ballots nor the entry of the consolidation order. It is conceded that the consolidation measure prevailed in all of the ten districts. According to the statute last

cited, whenever it is proposed that "two or more contiguous school districts" shall consolidate into one district, a petition must be presented to the district boundary board from each of the districts which it is sought to unite "setting forth specifically the districts it is proposed to consolidate." After the act has specified the number of qualified voters who must sign the petitions it says that the district boundary board, upon receiving petitions properly signed, must select a day for the election, notify the district school boards thereof and "be responsible for the posting of notices for a school meeting in each district to vote upon the question of consolidation of the districts designated in the notice from the district boundary board." It adds that the districts which it is proposed to consolidate "shall specifically be designated in the notice of the meeting."

The appellant's brief sets forth six assignments of error which, however, present only five contentions. They are: (1) The petitions filed with the district boundary board by all of the districts, except No. 23, and which resulted in the election of June 1, were invalid because they failed to name all of the districts which it was proposed to consolidate; (2) the notices which were posted in all of the districts, except in No. 23, failed to designate all of the districts which sought consolidation; (3) the ten districts which sought consolidation were not contiguous; (4) the clerk and the three school directors, who were chosen in an election which was held after the consolidation order had been entered, were not lawfully elected; and (5) the school building bonds, which are described in the agreed statement of facts, and which the defendant district proposes to issue, will not be lawful obligations of the district.

The predicates for the two contentions last mentioned are virtually the same as for the first two, and if the first two are resolved against the appellant, the latter two must fail.

The following drawing shows the relative position of the ten original districts; the attacked order united them into one known as School District No. 23.

May 11, 1945, there was presented to the aforementioned district boundary board the petitions for consolidation which the appellant attacks. They were ten in number. Each emanated from one of the aforementioned school districts and each bore the required number of signatures. May 12, 1945, the board met, considered the petitions and ordered that an election be held in all of the districts on June 1, 1945, upon the issue of consolidation. The ten school boards were promptly advised of the boundary board's action. May 14, 1945, the school clerk of each of the ten districts posted in three public places in his district notice of the impending election. The clerk of District No. 23, besides posting the notice in three public places, published it in the issues of May 17 and 24, 1945, of the Elgin Recorder, a newspaper which circulated throughout the ten districts. According to the agreed statement of facts:

"The proposal to consolidate the adjoining school districts with the Elgin School District was widely discussed and debated."

The agreed statement of facts recites incidents upon which that statement is based, and seemingly the latter is well founded.

It is agreed that the election was held June 1, 1945, that on June 14, 1945, when the district boundary board canvassed the votes, it found that a majority of the voters in each of the districts favored consolidation; in fact, it found that 140 affirmative and only 16 negative ballots were cast. It is also agreed that the board immediately notified the school boards in each of the districts of the result of the election "and ordered that each and all of said districts be consolidated into one district to be known as School District No. 23 of Union County, Oregon, effective July 1, 1945."

The appellant does not criticize the petition which was presented to the district boundary board by District No. 23, nor the notice which was posted and published in that district. It relies upon the facts that (1) in the outlying districts the petitions asked the board to "submit the question of consolidation with School District No. 23" but did not mention the other districts; and (2) the notices posted in the outlying districts stated that the election was "for the purpose of voting on the question of consolidating with School District No. 23" but failed to mention any of the other districts with which consolidation was contemplated. The two circumstances just mentioned, together with a contention that all of the ten districts were not contiguous, are the sole bases of the attack upon the consolidation. The petition which was signed in original District No. 23 mentioned by number the nine districts with which consolidation was sought. The notice of election which was posted in District No. 23 and likewise the notice published twice in the Elgin Recorder declared that it was proposed to consolidate District No. 23 with districts Nos. 14, 26, 29, 36, 45, 51, 59, 64 and 67.

We now quote from the agreed statement of facts:

"Based upon the order of the district boundary board that the several districts have been consolidated into School District No. 23, the directors of all of the said districts except No. 23 followed the directions of the district boundary board and assumed not to call or hold any annual school meeting in said districts on the third Monday of June, 1945, and then and since have budgeted no funds, have deliberately failed to exercise or claim to exercise any authority as school directors or school officials and have abandoned, discontinued and disestablished their several districts and have held no school and employed no teachers and have sur-

rendered up the funds, records, and real and personal property of their respective districts to the district boundary board and to the directors of said School District No. 23 who were elected at the annual school meeting and election regularly called and held in School District No. 23 on the third Monday of June, 1945.''

We interrupt the quotation for the purpose of observing that the annual school meeting in all organized districts occurs on the third Monday of June; see 1941 Oregon Laws, chapter 40. We continue with the quotation:

''The directors and clerks of each of said districts so involved in the consolidation proceedings all participated in such annual election held in said School District No. 23 and then and since have claimed no rights, exercised no authority as school officials, and have made and now make no claims inconsistent with the due and valid consolidation of said districts.

''Following the annual school election in 1945, the newly elected school board of School District No. 23 organized, with Fern S. Guthery, holdover member, being named as chairman, and W. H. Weatherspoon and T. B. Burton elected respectively to fill vacancies for a three year term and a two year term. Said school board elected Josephine Harris as district clerk. The directors and clerk duly qualified as such, and ever since have been and now are acting as the district school board of said School District No. 23.

''On or about the 21st day of April, 1945, the school building in which the elementary and high school grades of Elgin School District No. 23 were housed, and all other buildings adjoining and adjacent thereto except the gymnasium were completely destroyed by fire. The school board then in office arranged to have school held in various places around the town of Elgin, and the present school

board made similar arrangements and conducted school throughout the school year of 1945-46. * * * The present school board, in exercising the jurisdiction assumed by it as herein described, prepared, advertised and adopted a budget of its receipts and expenditures for the school year of 1945-46 and levied a special tax of $22,050.00, upon all of the property within the school district, inclusive of that embraced in the consolidated districts, and this tax was certified to the county assessor of Union County, Oregon, and by him extended upon the assessment rolls and tax rolls of said county and against the property of all property owners within all of the districts involved in the consolidation, and the taxpayers in all of the said districts, including this relator, have paid the special school taxes thus levied against their property, there being a very few tax delinquents.''

We pause to observe that the fact just mentioned brought home to the relator, even to his pocketbook, notice of what was going on. The agreed statement of facts continues:

"Preliminary to the building of a new high school and grade school building, the district school board determined that it was necessary to purchase additional and adjoining land and entered into an option agreement with owners to purchase an adjoining block of land for the sum of $3,800.00. It was a part of the plan of consolidation to provide transportation to and from the public school buildings in Elgin, Oregon, for pupils living at a distance from such school building greater than two miles and within the limits of the former school districts sought to be consolidated in the proceedings herein described. The new school board also determined that it was necessary and proper to sell and dispose of, in its discretion, from time to time, the land and buildings of the several districts thus sought to be consolidated. In connection with the proposal to purchase additional land, arrange for the transpor-

tation of pupils and to sell and dispose of the said property, it was determined by said district school board to hold a school district special election, and on July 26, 1945, pursuant to due proceedings, such an election was held, resulting in a favorable vote on all three propositions thus submitted to the voters."

By way of interpolation we draw attention to the fact that the election just mentioned was the second which occurred in the defendant district since the entry of the consolidation order. Since the election of July 26 concerned financial and property matters, it must have been of direct interest to taxpayers such as the relator. The statement continues:

"Thereafter the district school board, from available funds, expended $3,800.00 in the purchase of the adjoining block of ground and proceeded to remodel and since to remove the building thereon so that school could be held therein pending the time a new school building should be constructed and that throughout the school year of 1945-46 school has been held in said building and other buildings in different parts of the town of Elgin. Pursuant to authority of the voters at said election, the district school board proceeded to budget and provide and has provided throughout said year and now provides several busses for the transportation of pupils to and from the Elgin School District, at an expense to the district in excess of $5,000.00. The district school board, pursuant to such authority, did sell and dispose of certain tracts of land belonging to some of the former districts and sold school buildings located on land to which the former school districts did not have title and these buildings have been removed from their locations.

"In connection with the plans of the school district to build another school building, the district school board * * * contracted for the services of an architect to build the new building, and such

452

architect has heretofore prepared plans and specifications for a building to be constructed * * *, upon the property formerly owned and the property purchased, all in original District No. 23. * * * The district school board has paid the architect for drawing said plans and for other services in connection performed by him. The district school board, following the adoption of said plans, advertised for bids for the construction * * *. The district school board now has under construction the basement of the new school building, * * *.

"On the 18th day of August, 1945, the district school board unanimously adopted a resolution to call an election on the question of whether or not bonds in the amount of $78,000.00 should be issued by the district school board of said district for the purpose of erecting and equipping a school building for school purposes and paying for additional land for a school site, said election to be held at the gymnasium on September 8, 1945, between the hours of two P. M. and seven P. M. of said day. Said election was called and, pursuant to directions of the school board, a notice of such election, dated August 18, 1945, was published in the Elgin Recorder, a newspaper published in said district in the issues thereof of August 23, 30 and September 6, 1945, and posted for a like period in three public places in said school district, one of which was the front door of the school gymnasium in which the school election was to be held.

"On the 8th day of September, 1945, at the gymnasium in Elgin, Oregon, the legal voters present elected judges and clerk of election (being the same persons who had previously been nominated by the board), and these judges and clerks proceeded to hold a special bond election, between the hours of two P. M. and seven P. M. of said day, after having complied with all laws relating to the qualifications of judges and clerks of election. Said judges and clerks complied with all the laws relating to the conduct of the election and the convassing and re-

porting of the results of the election and filed their affidavit and certificate of such election with the county treasurer, the county school superintendent and the clerk of the district. Thereafter the district school board duly canvassed the returns and declared the results. Such vote was as follows:

Total number of ballots cast _____ 58

Number of votes for issuance of bonds _____ 52

Number of votes against issuance of bonds _____ 6

"Thereafter and on the 8th day of September, 1945, at a meeting of the district school board regularly called and held and at which all members were present, the district school board adopted a resolution providing for the issuance of $78,000.00 general obligation bonds of School District No. 23, in which was provided the manner of payment thereof, the maturities therefor, and other related matters.

"On the 8th day of September, 1945, the said district school board adopted a resolution authorizing and directing the clerk to advertise for bids for the sale of said bonds on November 12th, 1945, at 7:45 P. M. at the city hall in Elgin, Oregon, and to publish a notice for bids on and sale of said bonds in the Elgin Recorder for at least two weeks prior to the date of sale (which notice was so published) and to post said notice for a like period (which notice was duly posted). Proof of such publishing and posting was thereafter filed and is now on file.

"On the 12th day of November, 1945, the district school board convened, all members being present, and opened and considered five separate bids which had been offered for the purchase of said bonds. No action was taken toward the acceptance of a bid and the said board adjourned until November 19th, 1945, when the board adopted Resolution No. 4-A, providing for the awarding and sale of $76,000.00 of said bonds for the purpose of erecting and equip-

ping a school building for school purposes and for additional land for school site, to the defendant First State Bank of Elgin, a banking corporation located and operating at Elgin, Oregon, at 1½% annual interest * * *.

"The relator and a few others similarly situated have raised no question as to the bond proceedings but have raised and do raise a question as to the legality of the organization of the district, particularly with relation to the sufficiency of the petitions filed from the outlying districts with the district boundary board and of the notices posted therein and as to whether some of said districts were and are contiguous to School District No. 23 within the meaning of the applicable law. The relator claims that the petitions for the consolidation of the districts as filed on behalf of all districts except No. 23, and the order and proceedings thereon, were wholly void and of no effect, and that the petitioners and the district boundary board never complied with the provisions of the statute relating to consolidating or annexing said districts to School District No. 23 and the district boundary board and defendants never acquired jurisdiction over the subject matter for the purpose of annexing said districts and the properties therein to said School District No. 23. Relator had actual knowledge of all the actions of the district boundary board herein recited.

* * * * *

"In no action at law or suit in equity in any court by any person or district has the validity of the organization of the consolidated school district been drawn in question prior to this proceeding.

* * * * *

"And it is hereby further stipulated and agreed that this cause shall be taken, considered and decided as an action at law in the nature of quo warranto, and * * * said foregoing statement of facts shall be taken and considered by the court as the special verdict of a jury * * *."

From the foregoing it appears with all the force of a special verdict of a jury that the relator "had actual knowledge of all the actions of the district boundary board" and that he paid the part of the tax assessed by the board of directors of the defendant school district which was levied against his property by the assessor. He avows ignorance of none of the things delineated in the agreed statement of facts. It may even be that he voted in favor of consolidation. The order of the district boundary board which consolidated the ten school districts was made June 14, 1945. The agreed statement of facts was not filed until a year later. Since the entry of the consolidation order (1) nine of the original school districts disbanded, have budgeted no funds, employed no teachers, maintained no schools, have surrendered their assets to the board of the defendant district and have ceased to exist as bodies corporate; (2) the defendant district has organized and the voters within it, at an election held the third Monday in June, 1945, chose its directors; (3) the defendant district has levied taxes and has held three elections—the first was to choose directors, the second was to gain ratification of its action in acquiring a site for a new schoolhouse, in providing transportation for the school children and in selling some of the property which belonged to the old districts, and the third was to gain authority to issue bonds in the amount of $78,000.00; (4) the defendant district has made expenditures for the purchase of property, the payment of teachers' salaries, the transportation of pupils, and the numerous other items incidental to the maintenance of a grammar and high school; (5) the defendant district, after taking over the properties of the ten districts which it succeeded, sold some of them; (6) the

defendant district, after acquiring the necessary site, began construction of a schoolhouse; and (7) finally, after a vote of the district had authorized the defendant school directors to do so, they contracted with the defendant bank to sell it $78,000.00 of bonds bearing 1½% interest.

School districts are "bodies corporate": § 111-808, O.C.L.A. The respondents argue that School District No. 23, after the entry of the order of June 14, 1945, was at least a *de facto* corporation. Municipal bodies organized in imperfect compliance with a statute under which they could have achieved a *de jure* status, but which exercised in good faith the powers which they imperfectly secured, are recognized as *de facto* municipal corporations: McQuillin, Municipal Corporations, 2d ed., § 175, and 56 C. J., Schools and School Districts, p. 254, § 90. We are satisfied that defendant School District No. 23 was at least a *de facto* corporation. A *de facto* municipal corporation, however, is not exempt from attack in *quo warranto* proceedings brought directly against it by the State or upon the relation of a private person: *State ex rel. v. School District,* 148 Or. 273, 31 P. (2d) 756, 36 P. (2d) 179, and McQuillin, Municipal Corporations, 2d ed., § 2694.

Although a *de facto* municipal corporation is not exempt from having its imperfections revealed when attacked by a writ of *quo warranto,* it does not necessarily follow that every person who chooses to denominate himself a relator and who seeks to challenge the validity of a municipal body which is engaged in administering public affairs, is at liberty to select his own time for launching the attack. A writ of *quo warranto* is one of the extraordinary remedies afforded by the law. Although the writ still retains some of its ancient

criminal aspects, such as enabling the court to fine the defendant (see § 8-812, O. C. L. A., and *Standard Oil Co. v. Missouri*, 224 U. S. 270, 32 S. Ct. 406, 56 L. Ed. 760, Ann. Cas. 1913D 936), yet it casts the burden of proof upon the defendant to make disclosure concerning the facts averred by the relator. In the event that the defendant's disclosure is unsatisfactory, a judgment may be entered against him, and § 8-815, O. C. L. A., authorizes the enforcement of the judgment "by attachment of the body of the defendant." When a relator is seeking to avail himself of such an extraordinary remedy, the courts are justified in viewing his application with scrutinizing eyes, especially if it appears that the defendant whose office is attacked is serving the public interests without compensation.

In *State ex rel. v. School District No. 9,* 148 Or. 273, 31 P. (2d) 751, 36 P. (2d) 179, Mr. Justice KELLY, on behalf of this court, said:

"Moreover, granting or refusing leave to institute a quo warranto proceeding in jurisdictions, where leave of court must first be had, rests largely in the discretion of the court when the application is made. In exercising its discretion, the court may and should consider all the circumstances of the case, the motives of the relator in having the proceedings instituted, the time which has elapsed since the cause of complaint occurred and whether the public interest will be served by allowing the information to be filed; and it may refuse leave, or decline to entertain the proceedings upon considerations of public policy, interest or convenience or because of long, unexcused and prejudiced delay or acquiescence on the part of the person complaining; and in a proceeding brought for the benefit of the relator primarily, the court's discretion is much greater than where purely public interests are involved: 51 C. J. 328, section 27, * * *."

In *State ex rel. Jackson v. Mansfield,* 99 Mo. App. 146, 72 S. W. 471, the court said:

"The courts of this country have come to exercise in the final disposition of quo warranto cases, that discretion which was originally only exercised in allowing the information to be filed; and they have come also to exercise some discretion when the proceeding is instituted by the state on the information of a state officer. These quo warranto proceedings are now commonly instituted of course and without leave; and, if there is to be any discretion used about the relief at all, it must be used in delivering judgment. So, too, as the proceeding may be instituted at the relation of any prosecuting attorney, the sanctity which originally attached to it when the information was exhibited by a great officer, like the attorney-general of England, or the attorney-general of the United States or of a state, who is supposed to represent in a peculiar degree the prerogatives and sovereignty of the state, no longer exists; and the remedy has grown to resemble ordinary civil litigation and at no stage, considering its present characteristics and the modern practice tolerating the filing of information as a matter of course, can discretion be so wisely or justly exercised as after the cause has been heard and the court is fully advised as to the facts. * * *. We think every interest of the state, such as the public peace, the security of person and property and the payment of the city's debts would be impaired rather than promoted by setting aside the incorporation at this late date and leaving the citizens without organization, administration or corporate privileges."

From the facts before us it is clear that the relator, and not the state, is the interested party. For instance, the agreed statement of facts, in words which we have already quoted in full, says: "The relator and a few others similarly situated have raised no question as to the bond proceedings but have raised and do raise a

question as to the legality * * *. The relator claims that the petitions for the consolidation of the districts * * * and the order and proceedings thereon were void * * *.'' Nowhere is it averred that the state has displayed any interest whatever in this proceeding or in the questions and claims which the relator seeks to present. So far as appears from the agreed statement of facts, the state is satisfied with the defendant school district and does not challenge its validity. Again, returning to the agreed statement of facts, we find the following: ''The relator demands judgment against the defendants * * *.'' Thus, it is the relator, and not the state, which seeks to blot out the defendant school district and throw into a condition of chaos the schools of that large area.

■ The relator makes no explanation whatever of his delay of one year in the institution of this proceeding. We have shown from the language of the agreed statement of facts that he admits ''actual knowledge of all the actions of the district boundary board'' and says that he paid his portion of the tax levied by the defendant school district. In the payment of the tax he acquiesced in the validity of the consolidation order. If up to that time the defendant officials had any doubts concerning the legality of the consolidation, they were justified in viewing the payment of the tax as ratification of what had taken place. Had this proceeding been instituted before the annual school election of 1945 was held, embarrassment would have been avoided; or had it been instituted before the election of July 26, 1945, wherein the action of the defendant school directors was ratified in selling property which previously belonged to the original ten districts and in contracting, not only for a new school site but also for

460

transportation facilities, the proceeding might. have seemed timely. Not only did the relator permit those two occasions to pass by without availing himself of either of them, but he also allowed the election of August 18, 1945, to be held without challenging it by a suit. We have from the relator no explanation whatever of his protracted neglect of rights which he now claims and wishes to assert in the name of the state. The conclusion appears to be inescapable that he is interested, not in the validity of the defendant school district, but in the validity of the proposed bond issue. Proceedings of this kind on the eve of bond issues have become so frequent that those participating in them sometimes refer to the courts decision as. an underwriting of the bonds. If it is the bonds which interest the relator, then he is seeking the protection of a private, as distinguished from a public, right. Proceedings of this kind can not be maintained for the protection of private interests: 44 Am. Jur., Quo Warranto, p. 98, § 18.

We shall not narrate again the events which transpired while the relator remained mute and inert. It suffices to say that if this proceeding must succeed and if the relator is given judgment, the sizeable area served by the defendant school district will be devoid of school facilities. When anyone asks for a judgment attendant with such deplorable consequences, he should come prepared to explain his delay. The relator should have disclosed at the very beginning why he did not challenge promptly any of the three elections which occurred after the entry of the consolidation order, and why he did not institute a suit attacking the validity of the defendant school district before circumstances had become so altered that if he succeeds the area will be bereft of school facilities. The three elections were,

in effect, successive ratifications by the voters of the consolidation order. The defendant school district, as a *de facto* corporation, can defend itself against any proceeding which he, as an individual, can maintain. It·is·our·belief that he became too tardily a relator to avail· himself of . a proceeding in the nature of *quo warranto*. The circuit court, in the exercise of its discretion, should have refused to entertain this action.

■ So far we have left unmentioned laches and estoppel. · *State ex rel. v. School District No. 9,* 148 Or. 273, 31 P. (2d) 751, 36 P. (2d) 179, says:

> "In 1918, this court decided the case of State v. Hyde, 88 Or. 1, 169 P. 757, Ann Cas. 1918E, 688. There, in a characteristically exhaustive and scholarly opinion, Mr. Justice McCAMMANT, speaking for the court, announces that this court is committed to the principle that the doctrine of laches is applicable to the state."

*State ex rel. v. School District No. 9* was a *quo warranto* action in which the relator sought a judgment declaring that the defendant school district was illegal and void. *State ex rel. v. Union High School,* 152 Or. 412, 53 P. (2d) 1047, and *State ex rel. Weatherford v. Hayworth,* 152 Or. 416, 53 P. (2d) 1048, are two recent instances in which this court held that laches bars the state, when it is acting upon the relation of a private party, from challenging the validity of a school district. As has been frequently stated, the passage of time is not the only element which determines whether laches has occurred. It is the cumulation of events, especially those which bring home notice to the plaintiff and prejudice the defendant, which determines whether laches has occurred. In the present instance, a scant year passed from the entry of the consolidation order

to the filing of this proceeding. But it was an eventful year. The events that transpired were of public interest and, since the population of the defendant school district was small, the chances are that everyone residing within it was reasonably familiar with what the defendant school directors were doing. In any event, the relator concedes actual knowledge. It is our belief that, under the facts before us, the relator is barred by laches from maintaining this proceeding.

The judgment of the circuit court is affirmed.