THE PEOPLE, ex rel., etc., *v.* KEELING et al.

4  129
5  489

1. The Constitution confers upon this court the power to issue the writ of *quo warranto.*

2. A change in the time merely of holding its annual election neither affects the corporate existence of an incorporated city nor in any way changes or abridges its powers or duties within the meaning of section 2745 of the General Laws.

3. Where a municipal corporation held its election on the first Monday of April, as provided by Revised Statutes (1868), instead of the first Tuesday of April, as provided by the General Laws (1877), and the corporation had not reorganized under the general law, *held,* in the absence of averments to the contrary, that the action of the authorities was free from design or fraud.

4. It is an established doctrine that granting or refusing the writ to test the right to an office or franchise is a matter of sound discretion, notwithstanding there may exist a substantial defect of title. The sole ground that the election in this case was held on a wrong day, *held* insufficient to put the respondents upon a defense of their title.

INFORMATION in the nature of a *quo warranto.* The respondents demurred.

Messrs. RICHMOND & STANTON, for relators.

Messrs. WELLS, SMITH & MACON, for respondents.

ELBERT, J.   The Constitution confers upon this court the power to issue the writ of *quo warranto.*

This is an information in the nature of a *quo warranto,* and in taking jurisdiction of it, it is perhaps proper that we should say, in view of some conflict of decisions in other States upon similar constitutional provisions, that in our view the framers of the Constitution used the words, "writs of *quo warranto*" as synonymous with "information in the nature of a *quo warranto,*" or as including that proceeding which had substantially the same end, and which had both in England and America largely usurped the place of the ancient writ. High on Extraordinary Remedies, § 619 *et seq.,* and cases cited.

Section 2691, General Laws, p. 903, provides that "the

first Tuesday in April shall be the regular annual period for the election of municipal officers," and "all officers whose election is provided for in this act or may be provided for by ordinance, shall be elected on that day."

This provision is applicable to all municipalities within the State, whether organized under the provisions of the act referred to or existing under organizations had under the general law prior to the passage of the act. This is not intended to apply to municipalities acting under special charters fixing a different day.

There are obvious reasons why the annual municipal elections within a State should be held upon one and the same day, and we think such was the intention of the legislature. Nor is this view in conflict with section 2745, General Laws, which provides that the existence of cities and towns heretofore incorporated within the State, which shall choose to retain their present organization, shall not be affected, nor the power or duties thereof in any manner changed or abridged by the provisions of this act."

A change in the time of holding its annual election neither affects the corporate existence of an incorporated city, nor in any way changes or abridges its powers or duties within the meaning of the act.

The provision, therefore, of the Revised Statutes (§ 1, art. 2, ch. 84, p. 605), fixing the first Monday of April of each year for annual municipal elections, is repealed so far as it relates to the time of holding the election.

That the annual election of municipal officers for the city of Pueblo was held upon the first Monday of April as provided by the Revised Statutes, and not upon the first Tuesday of April, as provided by the General Laws is the only defect alleged against the title of the respondents as mayor and aldermen of the said city.

There is no allegation in the petition that the election was held on the wrong day knowingly or for any fraudulent purpose. It doubtless was the mistake of the officers by whom the preliminary steps for holding an election on that

day must have been necessarily taken. As the city of Pueblo had not chosen to reorganize under the provisions of the General Law, it was by no means free from doubt that the time for holding their annual election had been changed. It was a mistake upon a question of law which gave the officers of many of our cities trouble. In the absence of averments to the contrary, we are at liberty to say that their action was free from design or fraud. There is no allegation that the election was not in all other respects regular and in accordance with the provisions of the laws governing elections. It does not appear that any elector objected to the holding the election on that day, nor was in any way prevented or deterred from casting his vote for the candidates of his choice. There is no allegation, nor is there any reason to believe that the election was not called and held in good faith, or that it was not participated in generally by the qualified electors of the city. There is no claim or pretense that the respondents do not discharge their duties as officers with fidelity, or that the public interests of the municipality are in any way jeopardized. The prayer for the writ in this case is based upon the one averment, that the election upon that day " was without warrant of law." That it was so, is not necessarily conclusive upon our action.

It is an established doctrine that granting or refusing the writ to test the right to an office or franchise is a matter of sound discretion, notwithstanding there may exist a substantial defect of title. In the exercise of this discretion the court may take into consideration the necessity and policy of allowing the proceedings, as well as the position and motives of the relators. It may weigh the considerations of public convenience involved, and compare them with the injury complained of. High on Extraordinary Remedies, § 605, and cases cited.

The case of *The State ex rel.* v. *Tolan,* 4 Vroom, 195, is a leading case upon the question involved. Its facts are analogous, and we see no reason why this case does not

come within the rule there laid down. DEPUE, J., says: " It is not alleged that the holding of the election on a day different from the day fixed by law was induced by any corrupt, fraudulent or indirect motive. It is shown that it was the result purely of a mistake; the number of votes cast at the election shows that the election was largely attended by the qualified voters. There is no complaint that it was not fairly conducted, nor that a single voter was prevented from exercising his franchise of voting because of the time of holding the election. In all other respects except as to the day the election was held in complete accordance with law. In this respect the non-compliance was due to an honest mistake; circumstances, such as these here stated, induced the court of King's Bench, in the case of *King* v. *Parry*, to refuse leave to file the information, where the title of the defendants was clearly defective." The case of the *Commonwealth* v. *Jones*, 12 Penn. 365, C. J. GIBSON delivering the opinion, is an instance of the exercise of this discretion in refusing the writ. There the respondent sought to be ousted was clearly ineligible. We have been unable to find any authorities in conflict with these views, nor do counsel cite any.

The consideration, that a successful prosecution of the proceedings would result in the suspension of all municipal government in the city, largely controlled the discretion of the court in refusing the writ in the case first cited. The same consideration, we think, obtains in the case at bar. The ouster of these respondents would not result in re-instating the former mayor and aldermen.

It is not claimed but that the respondents were regularly and peaceably inducted into office upon the certificates of election issued by the clerk under the provisions of the statute. No municipal officers were elected upon the day fixed by law, nor are the outgoing mayor and aldermen here, or elsewhere, so far as it appears, contesting the title of the respondents; nor does it appear but what they voluntarily surrendered their respective offices to the respond-

ents at the time of their induction into office. This is a fair presumption, and in the absence of averments to the contrary, this court cannot safely act upon any other.

The result of the proceeding, so far as we can determine from the information, would be to leave the city of Pueblo without a municipal government for the coming year. The former mayor and aldermen, having voluntarily surrendered their offices, cannot at will resume them, or rehabilitate themselves with powers and duties which they in effect have resigned. The provision of the law, that they shall hold their offices until their successors are elected and qualified, is without force to avoid the consequences of their voluntary surrender.

If it were conceded in accordance with the doctrine of some of the decisions (*Coles Co. v. Alison*, 23 Ill. 437; *People v. The Town of Fairbury*, 51 id. 149), that the annual election, by mistake not having been held on the day fixed by law, might still be legally called and held, we are met with the difficulty that there would be no one with power or authority to call a special election to fill the vacancies.

In the absence then of any fraudulent design or practice demanding our interference for its defeat ; in the absence of any usurpation of offices, in any but a technical sense, the title of the respondents, having for its foundation *substantially* the expressed will of the people, so far as we are able to determine ; with a view to the demands of the public interests; looking to the stability and repose of the municipality concerned, we do not feel at liberty to put the respondents upon a defense of their title upon the sole ground that the election was holden upon a wrong day. Nor can we see that any confusion can arise, or any interests, public or private, be prejudiced by this refusal of the writ. The acts of an officer, *de facto*, are valid so far as the rights of the public or third persons are concerned, and neither the title of such officer nor the validity of his acts as such can be

indirectly called in question in a proceeding to which he is not a party. *State* v. *Tolan, supra.*

The demurrer to the information is sustained, and the rule to show cause is discharged with costs.

*Demurrer sustained.*