STATE ex rel. J. W. JACKSON, etc., Appellant, v. TOWN OF MANSFIELD, Respondent.

St. Louis Court of Appeals, February 17, 1903.

1. **County Court: JUDGMENT: NOT MINISTERIAL ACT: INCOR-PORATING A CITY OF THE FOURTH CLASS.** The order of a county court ordering the incorporation of a town as a fourth-class city, is a judgment, not a ministerial act; but a judgment which is not conclusive in a proceeding instituted by the State to test the legality of the corporation.

2. ———: ———: ———. A county court can not incorporate a place as a city of any class if it has been theretofore organized as a town or city, but such change must be made by a vote of the inhabitants.

3. **Quo Warranto: DISCRETION OF COURT: PRACTICE, TRIAL.** A proceeding by quo warranto to oust a municipality of its franchises, for illegality in proceedings for incorporation, brought by the State's attorney without leave of court, is within the discretion of the trial court, to be exercised after full hearing.

4. ———: ———: LACHES ON THE PART OF THE STATE. A municipality was organized as a city of the fourth class by decree of the county court, and acted as such for eight years; and, in quo warranto to oust it of its franchises for illegality in its incorporation, there was no evidence that a judgment in favor of relator could serve any useful purpose, but it might result in great injury; *Held*, that the State was barred by laches from obtaining such relief.

Appeal from Wright Circuit Court.—*Hon. Argus Cox,* Judge.

AFFIRMED.

*F. M. Mansfield* for appellant.

(1) The casual reading of respondent's answer will, we think, convince the court that plaintiff's motions to strike out a part of it and to make it more definite and certain, ought to have been sustained. (2)

The attempted change of the corporate character of the defendant city by petition to the county court was and is a nullity. R. S. 1889, sec. 5257. State ex rel. v. Young, 61 Mo. App. 494. (3) In order for laches or acquiescence to operate as a bar in a court of equity, the neglect or omission to assert a right must be such as will, when taken in conjunction with lapse of time and other circumstances prejudice the right of the adverse party. 12 Am. and Eng. Ency. Law, 533; Cranner v. McSword, 24 W. Va. 601; Nudd v. Powers, 136 Mass. 273; Dagger v. Van Dyke, 27 N. J. Eq. 130; Platte v. Platte, 58 N. Y. 646; Wollaston v. Tribe L. R., 9 Eq. 44; Bates v. Perry, 51 Mo. 449. (4) The order of the county court attempting to change the corporate character of the defendant city, being absolutely void, and there being no evidence that any one has, by reason of the alleged laches or acquiescence of plaintiff been induced to do something or abstain from doing something to their injury, the doctrine of estoppel does not apply. State ex rel. v. Sitlington, 51 Mo. App. 259; Spurlock v. Sprouls, 72 Mo. 503; Sherrer v. Ingerman, 110 Ind. 428;Void acts are incapable of ratification. Nichols v. Bank, 55 Mo. App. 81 et 91; McFarland v. Heim, 127 Mo. 327; 2 Herman on Estoppel, 922. (5) The town of Mansfield, containing less than five hundred inhabitants, is by section 5256, Revised Statutes 1899, declared to be a village, and not existing under any special law it could not elect to become a city of the fourth class. R. S. 1899, sec. 5255.

*Thomas H. Musick* for respondents.

(1) Quo warranto not being an equitable but only a common-law and statutory proceeding, the appellate court will not review the evidence but only pass upon any issue of law which may arise. State ex rel. v. Steers, 44 Mo. 223. (2) The main argument of appellant is leveled against the Westport case, 116 Mo. 582,

and discusses the matter of estoppel in courts of equity. While it is admitted that our case is not as strong as the Westport case, either in size of town, term of corporate existence or character of recognition, yet the principle involved is the same. And as quo warranto is not an equitable proceeding, the authorities cited on equitable estoppel are not applicable.

GOODE, J.—This is a quo warranto proceeding instituted at the relation of the State of Missouri in the name of the prosecuting attorney of Wright county, to oust the defendants Crippen, McKain and White from the offices, respectively, of mayor, marshal and collector of the town of Mansfield, and to deprive said town of its rights, franchises and privileges as a city of the fourth class on the ground that it was illegally incorporated as such.

The petition charges that said town, on the petition of two-thirds of its inhabitants presented to the county court of Wright county was, by an order of said court entered prior to February 13, 1893, incorporated as a village under the provisions of section 1666 of the Revised Statutes of 1889; that on the date mentioned a petition was presented to said county court which sought to have the corporate character of the town changed to that of a city of the fourth class, but that the proceedings to that end were void.

The return alleges the town was incorporated as a city of the fourth class on the seventh day of February, 1893, by an order of the county court of Wright county on petition of a majority of its then taxpaying citizens and has ever since enjoyed the rights, privileges and franchises of such a city; that the respondents are the officers. After denying the allegations of the petition, the return next pleads acquiescence and recognition by the State and public of the corporate individuality of the town of Mansfield as a city of the fourth class for eight and one-half years and that because of laches

the State should not be allowed to question the validity of its incorporation. The return also states the town has been sued as a city of the fourth class and judgments rendered against it and paid; that justices of the peace have been appointed for it on the same theory; that its territory has been excluded from road districts; that it has levied taxes, enacted and enforced ordinances, improved streets, a park and a cemetery, regulated the speed of trains, created a board of health and done other things within the powers of a city of the fourth class. Further, that should the town be ousted of its franchises, all said acts would be rendered illegal and future acts of the same kind prevented; that the public park, streets and sidewalks could not be kept in repair, nor the speed of trains through the town be regulated, nor quarantine against disease established, it being averred that at the time this action was instituted two cases of smallpox had been quarantined in the town which could not be cared for; and other matters and things are pleaded of a similar tenor.

A motion to strike out that portion of the answer setting up the plea of laches or estoppel was filed by appellant and overruled.

The records of the county court of Wright county were admitted at the trial to have been consumed by fire February 25, 1897, including the record of any orrepair, nor the speed of trains through the town. reguder of said county court incorporating the town of Mansfield as a village. A copy of an order of said county court of date July 7, 1893, incorporating Mansfield as a city of the fourth class pursuant to a petition of the majority of the resident taxpayers of the town, was introduced in evidence, said copy having been entered and preserved on the journal of the proceedings of the board of aldermen. There was also evidence to support the allegations of the return and to prove that since said date the town has had city officers, constructed and improved streets and sidewalks; that the city has a

park well set with shade trees, a public well, and further, that cases of contagious disease have been quarantined by the public authorities. It was also shown the city owed debts, that judgments for damages growing out of defective sidewalks had been rendered against the city and paid by it; further, that the city had collected taxes and had a street commissioner who looked after the condition of its streets. In fine, the evidence tended to prove that after the date of the above mentioned order of incorporation, the city had exercised all the usual functions and powers of one of the fourth class. Nor was there any proof of discontent with its status as a fourth class city on the part of any of the inhabitants or any reason for discontent; such as excessive expense and taxation, or bad social order, or lax enforcement of law, or inadequate protection of life, property or the public peace.

There was parol evidence to show Mansfield had been incorporated as a village prior to the aforesaid order incorporating it as a city of the fourth class; that the village incorporation was formed by an order of the county court. A recital in one of the journals of the place tended to show it had village trustees until December 23, 1892.

At the close of the evidence the circuit court found the town of Mansfield was duly and legally incorporated as a city of the fourth class by an order of the county court of Wright county, entered of record February 13, 1893, and that the other defendants were the duly elected, qualified and acting officers of said town and not usurpers. The court further adjudged that the petition be dismissed, from which judgment an appeal was taken.

The contention of the appellant is that inasmuch as Mansfield had been legally incorporated as a village by the county court prior to the date of the order incorporating it as a city of the fourth class, the latter order was a nullity.

Just what steps were taken to incorporate Mans-

field as a village, or whether they were sufficient and legal steps, such as warranted that action, the evidence does not apprise us. The circuit court found that the subsequent order of the county court incorporating it as a city of the fourth class was valid and, as the evidence to prove its previous incorporation as a village was both oral and meagre, we would not feel justified in setting aside the finding of the circuit court, granting that we have a right to review the evidence in this case and make an independent finding on the facts, as to which we have a doubt. The order of the county court ordering the incorporation of the town as a fourth class city was a judgment, not a ministerial act; a judgment, however, which is not conclusive in a proceeding instituted by the State to test the legality of the corporation, because the State was no party to the proceedings which led up to its creation. State ex inf. Attorney-General v. Flemming, 147 Mo. 1.

The statutes in force when the incorporation proceedings took place provided two ways in which a community might become a city of a certain class: First, if it was already incorporated by a special charter or under the general law as a city or town of some other class, it might become a city of the class to which its population entitled it to belong by the adoption of an ordinance to that effect by the vote of a majority of the legal voters of the town. Second, if the community desiring incorporation as a city of a certain class had not theretofore been incorporated, it might petition the county court of the county where it was situate and if said court was satisfied the majority of the taxable inhabitants had signed the petition, it could order it incorporated. R. S. 1889, art. 1, c. 30.

This law plainly means and has been held to mean that a county court can not incorporate a place as a city of any class if it has been theretofore organized as a town or city but that such a change must be made by a vote of the inhabitants. State ex rel. Beasley v. Young,

61 Mo. App. (St. L.) 494. But whether the rule would prevent a community which previously had been organized as a *village* from being thereafter incorporated as a city of the fourth class by an order of the county court, is not perfectly obvious. The language of the section (R. S. 1889, sec. 977) only precludes county courts from reincorporating a place which previously had been incorporated as a city or town.

· Be that as it may, the judgment of the circuit court was right. This case comes within the principle of State ex rel. v. Town of Westport, 116 Mo. 582, in which it was ruled with eminent wisdom, we think, that the corporate life of a community which has been acting as a city for years with the acquiescence of the State and to the contentment of the inhabitants, will not be destroyed for the mere asking.

The courts of this country have come to exercise in the final disposition of quo warranto cases, that discretion which was originally only exercised in allowing the information to be filed; and they have come also to exercise some discretion when the proceeding is instituted by the State on the information of a State officer. These quo warranto proceedings are now commonly instituted of course and without leave; and, if there is to be any discretion used about the relief at all, it must be used in delivering judgment. So, too, as the proceeding may be instituted at the relation of any prosecuting attorney, the sanctity which originally attached to it when the information was exhibited by a great officer, like the Attorney-General of England, or the Attorney-General of the United States or of a State, who is supposed to represent in a peculiar degree the prerogatives and sovereignty of the State, no longer exists; and the remedy has grown to resemble ordinary civil litigation and at no stage, considering its present characteristics and the modern practice tolerating the filing of informations as a matter of course, can discretion be so wisely or justly exercised as after the cause has been

heard and the court is fully advised as to the facts. And this discretion is used in cases to oust municipalities of their franchises on account of some illegality in their organization. State ex rel. v. Tolan, 33 N. J. L. 194; Jameson v. People, 16 Ill. 258; People v. Maynard, 15 Mich. 463; State v. Leatherman, 38 Ark. 81; People v. Keeling, 4 Colo. 129; State ex rel. v. Tipton, 9 N. E. (Ind.) 704. It will be found by consulting the foregoing authorities that one main reason for refusing judgment of ouster against the officers of a municipality alleged to have been illegally organized or against the municipality itself, where neither fraud nor an intentional violation of the law is charged, is that public or private interests may be seriously impaired by such a judgment. And this was the theory on which several of those cases were decided, as it is a general rule of law. 2 Dillon, Munic. Corp. (4 Ed.), 901.

No useful purpose, so far as the evidence discloses would be subserved by ending the existence of the city of Mansfield, and much mischief might be done. If it was not legally organized as a city of the fourth class, it should not have been permitted to use its franchises for so long a period if the use was detrimental to the welfare of the community, and doubtless would not have been. We think every interest of the State, such as the public peace, the security of person and property and the payment of the city's debts would be impaired rather than promoted by setting aside the incorporation at this late day and leaving the citizens without organization, administration or corporate privileges. Unless some equity in favor of the State is shown both by averment and proof, its laches ought to preclude it from suddenly interposing to blot out the legal existence of the town after tolerating it as a working municipality for eight years. If it is thrown back to a village, granting it was ever legally such, it will have no present officers or organization. So, without reference to any other question, we hold that

such indifference and laches on the part of the State have been shown and that such injurious results would likely ensue from changing the town's status, that the judgment of court below was fully justified, and it is affirmed. *Bland, P. J.,* and *Reyburn, J.,* concur.