No. 15,865.

HOUSTON ET AL. *v.* KIRSCHWING, MANAGER OF SAFETY AND
EXCISE OF DENVER ET AL.

(184 P. [2d] 487)

Decided August 11, 1947.   Rehearing denied September 8, 1947.

Mr. JOHN F. MUELLER, Mr. GREGORY A. MUELLER, for plaintiffs in error.

Mr. MALCOLM LINDSEY, Mr. ANTHONY F. ZARLENGO, Mr. HARRY H. RUSTON, for defendants in error.

MR. JUSTICE STONE delivered the opinion of the court.

PLAINTIFFS in error as plaintiffs below sought judgment declaring void certain sections of an ordinance regulating sale of solid fuels within the City and County of Denver. At the close of the evidence the court sustained defendants' motion to dismiss on the ground that plaintiffs had shown no right to relief.

The evidence discloses that the fuel with which the ordinance is primarily concerned is coal; that there are numerous coal mines within trucking distance from Denver producing coal of varying qualities and that there are two classes of dealers engaged in its sale and distribution at retail: 1. Yard operators, who generally purchase by the carload, have established places of business with yards and bins for storage and private scales for weighing coal sold, and who usually operate several delivery trucks and frequently advertise and sell coal under their own trade names; 2. truckers, who generally operate from their homes, with only one truck, and upon receipt of an order for coal through solicitation or by telephone, drive to the mine from which it is procured, and bring it from there direct to the consumer, the coal being weighed both at the mine and at city scales.

The ordinance here challenged was prepared by the Coal Merchants Association, made up largely of yard operators, in cooperation with some nonmembers, and

was generally opposed by the truckers, a group of whom instituted this action. On the case being called for trial the city attorney immediately asked for the entry of appearance as assistant attorneys for the city, of two attorneys representing coal dealers supporting the ordinance, and upon their appearance being entered, though not in behalf of the city, the city attorney appears to have turned over to them the conduct of the trial. While presumably such an ordinance was enacted in the interest of the people, the sole witnesses called were individual truckers in behalf of plaintiffs, and large coal yard operators as in behalf of the city. No city official or disinterested student of the subject involved was heard.

The evils sought to be cured by the ordinance as testified by its proponents were: (1) Short weight; (2) substitution of coal inferior to that ordered; (3) a lack of dependable storage supply of coal in case of strike or storm; and (4) the so-called "snow birds," that is, truckers who intermittently haul coal without obtaining a license or complying with any regulations.

█ The point last urged by the plaintiffs in their brief, to wit: that the ordinance was not adopted in compliance with section 216 of the city charter, deserves first consideration. Publication of an ordinance is not a necessary prerequisite to its passage except as required by charter. Section 216 of the charter provides that: "No bill or resolution shall be passed until after the expiration of one week from and after the introduction of the same, nor until one publication thereof shall have been made. Any amendment altering the same shall be published in like manner before final action thereon. No ordinance shall be revised or amended, or the provisions thereof extended or conferred by reference to title only. So much thereof as is revised, amended, extended or conferred, shall be re-enacted at length."

The stipulation of facts discloses that after passage on first reading the ordinance was published as required

by charter, and that on final reading it was amended as follows: "By striking the word 'applicant' on the first line of Paragraph (c) of Section 2 thereof and substituting the word 'application,' therefor. By striking Section 6 of the said Ordinance. By changing Section 7 to Section 6, Section 8 to Section 7; Section 9 to Section 8, Section 10 to Section 9; Section 11 to Section 10. By amending Paragraph (c) of Section 7 as renumbered to read as follows: 'It shall be the duty of the Manager to employ such inspectors as may be necessary to supervise the licensing and to enforce all of the provisions of this act.' " And that said amendments were published as hereinabove quoted.

The requirement of publication is a matter of substance, not of mere form. "Its purpose has been many times stated by the courts. It is intended to prevent the confusion which results from amending ordinances by reference to the title, or by interpolating words without restating the part amended." *Post Printing & Pub. Co. v. Denver*, 68 Colo. 50, 189 Pac. 39. The first amendment was the result of an evident clerical error in the original draft of the ordinance. The amendment made no change of meaning or effect, but merely clarified a meaning which was apparent without the change. The second amendment consisted of the deletion of an entire section. Nothing in the charter requires republication by reason of the fact that a section is deleted and the renumbering of subsequent sections because of such deletion is again a mere matter of form without in any way affecting the substance. The one provision substantially changed was fully set forth as amended in the republication and so much thereof as was amended was re-enacted at length in compliance with the statute. The objections to the publication of the ordinance are without merit.

The first provision of the ordinance here challenged is that exempting from its provisions "peddlers who deliver solid fuel in total quantities of less than 500 pounds." Certain leading questions asked by counsel for

defendants contain the inference that the classification of dealers who sell coal in 500 pound lots or less is meant to include those who sell coal by the sack in connection with the sale of other commodities. The evidence makes no further mention of the exemption. It might well be that sales by sack would result in less likelihood of short weight and make proper a classification whereby such dealers should be exempted from the act. Accordingly, plaintiffs have failed to establish such unfair discrimination in this exemption as to invalidate the ordinance.

The section provision of the act here challenged provides: "The license provided for in paragraph (a) above shall be issued and in force only during a period when the dealer shall be financially able to pay for any damages arising in connection with or by reason of his operation of the solid fuel business, or resulting from the ownership, maintenance, use or operation of a vehicle by the dealer or his agent in connection with or by reason of his operation of the solid fuel business. Proof of financial responsibility shall be deemed sufficient if the applicant for license or dealer, shall submit to the manager a good and sufficient surety bond approved by the manager in the amount of One Thousand Dollars ($1,000.00) or reasonably sufficient evidence of his ability to meet the financial obligations imposed by this ordinance, and to pay for or on account of bodily injury to or death of any person in the amount of Five Thousand Dollars ($5,000.00) and subject to said limit for any one person injured or killed, ability to pay in the amount of Ten Thousand Dollars ($10,000.00) for or on account of bodily injury or death of two or more persons in any one accident, or for damage to property in the amount of One Thousand Dollars ($1,000.00) resulting from any one accident with respect to each vehicle."

In view of the hazards arising from the use of coal delivery trucks on the streets, a requirement of reasonable protection of the public, evidenced and measured

by insurance against property damage, bodily injury and death, might well be deemed proper. *Sverkerson v. Minneapolis,* 204 Minn. 388, 283 N.W. 555, 120 A.L.R. 944. Whether in a business in the conduct of which, other than through the use of its trucks, there is no suggestion of hazard to the public greater than that involved in sale of many other types of merchandise, a bond in a reasonable penal sum might be required for the protection of creditors or customers or the public, we need not now inquire. Such is not the mandate of the ordinance. The ordinance goes much farther than that. It restricts the right to engage in the fuel business to those who shall be financially able to pay for *any* damages arising in connection with or by reason of the operation of the business. There may be damages in very large amounts arising by virtue of unforeseen hazards in the operation of such a business or of any mercantile enterprise. To require financial ability to pay *any* damages so arising as a condition precedent to the right to engage in such a business would close the door to a great majority of men and extend far the boundaries of monopoly. Such a requirement is oppressive and discriminatory and has no reasonable connection with public health, safety, or morals or the general welfare. It runs counter to our fundamental concept of American enterprise and public policy. The bond provided for in the ordinance is but one of the alternative methods presribed therein for satisfaction of such void requirement of financial ability, and being in satisfaction of a purpose beyond the city's authority, it must fall with the scheme of which it is a part. Accordingly, we must hold the above quoted section of the ordinance void.

The third provision challenged requires, in brief, a license fee of one hundred dollars for the operation of one yard and office, and one vehicle and five dollars for each additional vehicle operated. Under the former ordinance the license fee was twenty dollars for one truck

and five dollars each for additional trucks. These fees produced revenue approximately equal to the expense of inspection. The reason given for increasing the license fee to one hundred dollars was the loss of revenue resulting from elimination of the sack dealer and the need for additional inspectors. The only definite testimony as to the number of sack dealers was that of the president of the Denver Coal Merchants Association who testified that he knew of eight or ten but that there were probably more than that. There was undisputed testimony that with the short season, limited sales, and small profits, the one hundred dollar license fee would work a hardship on the truckers. While it is not fatal to such an ordinance that the fees provided are in excess of the expense of regulation and enforcement, still the one must bear reasonable relation to the other. Here, however, the objectionable feature is not primarily in the increased revenue provided for but rather in the discrimination resulting from imposition of the burden of the increase almost entirely upon the truckers. There is no suggestion that the likelihood of short weight or misbranding of coal is not as great through use of a second truck as of a first, or that the cost of inspection may vary between them or that the single truck operators are less dependable or more ready to perpetrate frauds on their customers than the yard operators. The fact that such dealers bring to their customers the weight tickets from the mine where the coal was purchased, as well as those of the city scale, as required by the ordinance, would tend to give protection to their customers at least equal to that assured from the large dealer who uses his individual trade name for his coal and furnishes a weight ticket from his own bonded scale. The evidence discloses one dealer who recently operated sixty-seven trucks and under this ordinance that dealer would pay a total of $430 in license fees, while single truckers operating the same number of trucks would be compelled to pay $6,700.00. The only testimony given as to

why the additional licenses were kept at five dollars was to the effect that from study of similar ordinances they found no instances where the fee for additional trucks was over five dollars, and the frank statement that the fee on the extra trucks was to cover expense of issuing plates to those trucks. By interrogation of one of the larger operators counsel for defendants attempted to establish as a further reason that the additional licensed trucks were used only a few days during the year to take care of the extra business, but his witness replied that they operated from six to seven months, and the testimony regarding use of trucks of individual truckers was to the effect that their coal deliveries extended through approximately seven months of the year. To be valid, license fees must be reasonable, fair, and impartial. *Moffitt v. City of Pueblo,* 55 Colo. 112, 133 Pac. 754. The disparity here shown between the required license fee for one truck and that for additional trucks is arbitrary, oppressive and discriminatory, and such requirement cannot be sustained.

The next provision attacked requires that no license shall be held by any person who does not maintain a bona fide office in the City and County of Denver. The evidence discloses that none of the plaintiffs has an office or place of business separate from his home. All except plaintiff Hansen reside within the City and County of Denver. He resides in the adjoining city of Aurora and there transacts a major part of his business, but has for the last four years procured a Denver license, and about twenty-five per cent of his coal has been sold to Denver customers. He testified that the requirement of separate office in Denver and the increased fees required by the ordinance were prohibitory as to him and would put him out of business in Denver.

In the sense here intended the word "office" is defined as the building, room, or department in which the clerical work of an establishment is done. Webster's New International Dictionary (2d ed.). The only apparent

office requirements of the individual one-truck operators would be a telephone for convenience of customers who might occasionally order coal in that way, a record book, and some person available to answer the infrequent telephone calls incident to such a business. The requirement of an office separate from the home for such incidental use would appear to be unreasonable and without relation to the public welfare. Whether or not the dwelling houses of the resident plaintiffs would constitute "bona fide offices" we need not now determine for the reason that such determination would not settle the controversy over that provision of the ordinance so far as plaintiff Hansen is concerned. To require a "bona fide office" within the city would discriminate against non-residents such as plaintiff Hansen. Discrimination in license fees between those having their business located within a municipality and those from without is sometimes sustained "on the principle that, although the different classes are engaged in the same general business of selling merchandise, it is in the several instances carried on under such different circumstances, and by methods so essentially dissimilar, and with such widely different facilities for profit, as to furnish just and reasonable ground for such discrimination." *Ex parte Haskell*, 112 Cal. 412, 44 Pac. 725, 32 L.R.A. 527. In other words, while valid discrimination cannot be based merely on the maintenance or nonmaintenance of plants or places of business within the municipal limits, yet this fact in some circumstances may so affect the nature of the business as to afford a proper basis of classification. See cases cited in annotation 109 A.L.R. 903. There is nothing in the ordinance or the evidence involved in the instant case to suggest that the selling of coal is carried on under any different circumstances or in any essentially dissimilar method or with different facilities for profit, whether or not the operator has either a residence or a "bona fide office" within the City and County of Denver. Like the other plaintiffs Hansen operates but

one truck and upon receipt of an order goes out to the mine in northern Colorado from which it is ordered, has his truck there loaded and weighed, then weighed again at the city scale, from which he receives a ticket which is given to the purchaser upon delivery of the coal. Neither is there a suggestion that such an office would facilitate the inspection of trucks or help accomplish the declared purposes of the ordinance.

In most of the cases discrimination against nonresidents or those not maintaining a place of business within the city has been evidenced by requiring a larger license fee; here it is by elimination from the industry. In *Larsen v. City of Rockford,* 371 Ill. 441, 21 N.E. (2d) 396, an ordinance was held not invalid because it required licensees either to be residents of Rockford or to maintain a business address in that city. The court in so holding noted that arbitrary discrimination between residents and nonresidents in the issuance of licenses or the fees charged would invalidate the municipal ordinance. The ordinance there involved concerned the operation of vending machines for the sale of foods and gum and the court said, "The hazards of purchasing from vending machines include loss of the deposited coin because of failure of the machine to function, delivery of products of a different brand, quality or weight than represented, and the dispensing of stale, spoiled or contaminated products. In consideration of these factors the city council might reasonably have believed that public safety and health would be promoted by requiring operators of vending machines to maintain a place where inspectors of the city health department might communicate with them regarding location and contents of the machines, and where customers might register complaints and receive adjustments. The use of automatic vending machines eliminates employees at the place of sale and distribution. Under such circumstances, we believe the council was warranted in requiring every operator to establish a residence or business address in

the city for the protection of customers and to facilitate enforcement of the ordinance. That this is no hardship is evidenced by the fact that both plaintiffs in this case maintain warehouses in Rockford for storing supplies with which to service their machines." It will be noted: first, that the sale of merchandise by vending machines is essentially different from other methods of merchandising, which is not the case with the sale of coal here involved; second, that the sale through vending machines made reasonable and necessary the requirement of residence or business address of the operator to enable inspection and adjustment of complaints, while no such situation here exists; third, that the requirement in that ordinance was not of "bona fide office" but merely of residence or business address whereby communication might be had with the operator; and fourth, that the plaintiffs in that case maintained storage warehouses in the city in connection with which a business address could not be a burden.

The Larsen case, supra, emphasizes the distinction between reasonable and arbitrary classification as well as the distinction between reasonable and arbitrary requirements of nonresidents. In the instant case there is virtual prohibition of a nonresident trucker from engaging in the business. Such arbitrary power the city does not possess. "Where, however, it appears from gross disparities, from extraordinarily large exactions (as compared with others), and from all the facts, that the real intent and purpose is, not to raise revenue, but to destroy the business of nonresidents, in the interest of resident dealers and businessmen, when that appears, then nonresidents are denied that equal protection of the laws which the Constitution guarantees to all." *Campbell Baking Company v. City of Maryville*, 31 F. (2d) 466, quoted in *Silvertsen v. City of Menlo Park*, 17 Cal. (2d) 197, 109 P. (2d) 928. "However, it is equally well established that if discriminatory legislation is arbitrary, unreasonable and passed for the sole purpose of creating

a protective tariff for the benefit of business located in the particular municipality, it is unlawful." *Silvertsen v. City of Menlo Park, supra.* Such is the obvious purpose of this provision.

Again it is urged that the provision of the ordinance is void which requires that only one licensee shall operate out of any yard or office except under conditions of ownership as therein specified. Since there is no allegation that any two or more plaintiffs operate out of one office, that question need not now be considered.

Accordingly, the judgment is reversed with instructions to enter judgment not inconsistent with the views expressed herein.

MR. JUSTICE HILLIARD and MR. JUSTICE HAYS not participating.