No. 21046.

The City of Central *v.* William L. Axton,
individually, and d/b/a The Glory Hole Tavern, et al.
(410 P.2d 173)

Decided January 17, 1966. Rehearing denied February 7, 1966.

Albert B. Dawkins, for plaintiff in error.

Fugate, Mitchem & Hoffman, for defendants in error.

*En Banc.*

Mr. Justice McWilliams delivered the opinion of the Court.

THE designation of parties in this court is deemed necessary to an orderly consideration of this writ of error and such designation is therefore set forth as follows:

1. The City of Central, a municipal corporation which will hereinafter be referred to as Central City, is designated as the plaintiff in error;

2. William L. Axton, individually and doing business as the Glory Hole Tavern is designated as a defendant in error;

3. Faye Tyson, formerly known as Faye Clapham, individually and doing business as the Lost Gold Mine is designated as another defendant in error;

4. Carl and Elva Skagerberg, individually and doing business as the Grubstake and also doing business as Wells Fargo are designated as defendants in error;

5. Algie and Leola Steen, individually and doing business as Leola's Snack Bar are designated as defendants in error;

6. June Callahan and Isabelle Moncey are designated as defendants in error; and

7. Juannelle Cohen, individually and doing business as the Golden Key is designated as a defendant in error.

The City Council of Central City in 1957 enacted Ordinance No. 133 which made it unlawful for any person to engage in certain specified businesses, professions or occupations within Central City without first paying the clerk of Central City a license fee and obtaining from him a receipt or license setting forth that the fee had been paid. The ordinance enumerates the various "activities" for which a license is required and suffice it to say the ordinance is quite broad and all-inclusive in its terms. The manner in which the amount of the license fee is to be determined is also spelled out in the ordinance.

William Axton, who was engaged in the business of operating a combination restaurant and tavern, did not pay a license fee for the year 1960. Accordingly, Central

City, under the penalty section of the aforementioned ordinance, brought an action in the police court in and for Central City against Axton for his failure to pay the business tax. This proceeding culminated in a judgment in favor of Central City and against Axton in the amount of $200 and costs.

Axton appealed the judgment to the county court in and for Gilpin County and upon trial the complaint was dismissed on the ground that under its territorial charter Central City was held to lack the authority or power to impose such an occupational tax upon Axton. Upon review of that judgment we determined that under its territorial charter Central City did have the power to impose an occupational or business tax on Axton. Accordingly, the judgment was reversed and the cause remanded with directions that the trial court "reinstate the complaint and proceed to trial upon the issues formed by the pleadings." See *City of Central v. Axton*, 150 Colo. 414, 373 P.2d 300.

In the interim Central City brought similar actions in the police court in and for Central City against all of the other defendants in error for their failure to pay the license fee for the year 1961. In each instance these several actions culminated in judgments in favor of Central City and were as follows:

1. against Faye Tyson in the amount of $150 and costs;

2. against Carl and Elva Skagerberg in the amount of $250 and costs;

3. against Algie and Leola Steen in the amount of $100 and costs;

4. against June Callahan and Isabelle Moncey in the amount of $100 and costs; and

5. against Juannelle Cohen in the amount of $150 and costs.

Each of the foregoing judgments was thereafter appealed to the county court in and for Gilpin County and they came on for trial on the same date as did

Axton's case upon the aforementioned remand by this court.

As indicated, then, all of these several matters came on for trial in a consolidated proceeding in the county court in and for Gilpin County. However, upon the trial date, it was brought to the attention of the trial court that June Callahan was then deceased and that Isabelle Moncey's whereabouts were then unknown. Accordingly, upon motion, the trial court issued a procedendo and remanded the matter as it related to June Callahan and Isabelle Moncey to the police court in and for Central City. Hence, we no longer concern ourselves in this writ of error with June Callahan and Isabelle Moncey, who under the circumstances were improperly designated as defendants in error.

When these several matters came on for trial Carl and Elva Skagerberg filed a motion wherein they requested that their appeal be dismissed and the matter remanded to the police court or, in the alternative, that they be permitted to confess judgment in the county court in and for the County of Gilpin in the amount of $250 and costs. The trial court declined to rule on this motion and proceeded to trial as to the remaining defendants. At the conclusion of the trial, the court dismissed the complaints as to all of the defendants, apparently including in its order of dismissal both Carl and Elva Skagerberg who had previously asked to have their appeal dismissed or, in the alternative, sought to confess judgment in the sum of $250 and costs. By this writ of error Central City now seeks to have these various judgments of dismissal reversed.

As to the defendants in error Carl and Elva Skagerberg, the trial court should have either granted their motion to dismiss their appeal or granted their motion to confess judgment in the county court, and it was error under these circumstances to dismiss the complaint against them. Accordingly, we need hereinafter concern ourselves with the following defendants

in error only; William L. Axton, who operates a restaurant and tavern; Juannelle Cohen, who operates a restaurant and tavern; Algie and Leola Steen, who operate a snack bar; and Faye Tyson, who operates a guided tour through a gold mine and sells curios at the entrance thereto.

In its order dismissing the several complaints filed by Central City the trial court stated that it was doing so because the ordinance with which we are here concerned "is so ambiguous, so unreasonable, so arbitrary and so lacking in setting forth definitions and standards that the entire ordinance must be ruled invalid and unconstitutional."

In this court Central City argues that the several judgments of dismissal must be reversed for a variety of reasons, all of which may be categorized as follows:

1. the county court in and for Gilpin County did not have jurisdiction to entertain the attempted appeals by the several defendants from the judgments of the police court in and for Central City; and

2. if the county court in and for Gilpin County did have jurisdiction to entertain these appeals, it erred in finding Ordinance No. 133 unconstitutional.

Central City is still operating under a territorial charter granted it in 1864 by the Territorial Legislature. Hence, at the very outset it should be emphasized that we are not here concerned with a home rule city or one organized under general laws of the state relating to the organization and incorporation of towns or cities. Rather, we are concerned with a city which has chosen to continue to exist under a territorial charter granted it some twelve years before the State of Colorado came into being.

In connection with the jurisdictional issue raised by Central City, it is to be noted that this controversy arose and was resolved on the trial court level long prior to January 12, 1965, which was the effective date for most — though not all — of the several sections in

Amended Article VI to the Colorado Constitution. As regards this jurisdictional issue, Central City contends that the several defendants should have appealed the judgments entered against them in the police court to the district court, rather than to the county court for the County of Gilpin. In support of the contention that the county court of Gilpin County had no jurisdiction to entertain any of these appeals by the defendants in error, Central City relies upon Article VIII, section 7 of its territorial charter, which provides as follows:

"Appeals shall be allowed from decisions in all cases arising under the provisions of this act, or any ordinance passed in pursuance thereof, to the district court, and every such appeal shall be granted in the same manner and with like effect as appeals are taken from and granted by justices of the peace under the laws of this territory."

C.R.S. '53, 139-36-2 provides that appeals from a municipal or police court may be taken to the county court of the county where the municipal or police court is located. Central City argues, however, that the aforementioned provision of its territorial charter providing for appeals from the police court to the district court takes precedence over C.R.S. '53, 139-36-2. To support its theory that its territorial charter takes precedence over state statute, Central City relies upon C.R.S. '53, 139-1-9, which reads as follows:

"All general laws providing for the organization and government of incorporated cities and towns in the state of Colorado are hereby repealed; provided, that the existence of cities and towns heretofore incorporated within the state, which shall choose to retain their present organization, shall not be affected, nor the powers or duties thereof in any manner changed or abridged by any provisions of this chapter."

In other words, Central City contends in effect that unless and until its territorial charter is changed, presumably through joint action by the general assembly

and the City Council of Central City, its territorial charter is set in concrete, so to speak, and is not only virtually intransmutable but also paramount and superior to state statute. Therefore, under this line of reasoning, the territorial charter provision authorizing appeals from the police court to the district court would control, and not the applicable statute. In this regard Central City is mistaken, and in so contending Central City totally misconceives the nature of its relationship to the State of Colorado.

Contrary to the argument here advanced by Central City in support of its position, *County Commissioners v. Colorado Seminary*, 12 Colo. 497, 12 Pac. 490; *Colorado Seminary v. Arapahoe County*, 30 Colo. 507, 71 Pac. 410; and *City of Denver v. Colorado Seminary*, 96 Colo. 109, 41 P.2d 1109, have no applicability to the present controversy. Those cases involved a special charter granted by the Territorial Legislature to a private corporation, organized for educational purposes. Central City is a municipal corporation and being a municipal corporation its relation to the State of Colorado is different from that of a private corporation also operating under a territorial charter. The nature of the relation between a municipal corporation and the State of Colorado is spelled out in *Keefe v. People*, 37 Colo. 317, 87 Pac. 791. In that case we approved and adopted the following:

"These questions — indeed, the entire argument of defendant's counsel — seem to attach too little consequence to the relation existing between a state and its municipal corporations. Such corporations are the creatures — mere political subdivisions — of the state, for the purpose of exercising a part of its powers. They may exert only such powers as are expressly granted to them, or such as may be necessarily implied from those granted. What they lawfully do of a public character is done under the sanction of the state. They are, in every essential sense only auxiliaries of the state for the purposes of local government."

Using as a starting point, then, the premise that Central City is an arm of the state, the position advanced by Central City that C.R.S. '53, 139-1-9 freezes in perpetuity the powers and duties of that city as such existed in 1876 is untenable. C.R.S. '53, 139-1-9 was enacted into law by the general assembly in 1877 and it was but one section of an extended "Act in Relation to Municipal Corporations." In addition to spelling out the manner in which a city or town could be organized and incorporated, the general assembly in 1877 repealed "all general laws providing for the organization and government of incorporated cities and towns." In connection with such repeal the statute went on to provide that the existence of cities and towns theretofore incorporated which chose to retain their then existing organizations should not be affected thereby and further provided that the powers and duties of such a town or city were not to be changed or abridged in any manner "by any provision of this act." In other words, the injunction was that the powers and duties of a town or city which chose to retain its existence under its territorial charter were not to be altered by any provision "of this act." As to the true meaning of this legislative proviso now to be found in C.R.S. '53, 139-1-9 see *Kirkpatrick v. People*, 66 Colo. 100, 179 Pac. 338, where this court said:

"It is the proviso or saving clause in this section on which respondents base the contention that the town of Walsenburg, because incorporated prior to the passage of the Act of 1877, is not affected by, or subject to, that part of the act relating to the classification of municipal corporations. The proviso or saving clause in question had, and has, no such effect. A saving clause is intended to save something which might otherwise be lost. Sec. 287 Lewis' Sutherland Stat. Constr. The object of the saving clause, inserted in the section above quoted, was to preserve the *existence* of cities and towns which had been incorporated under general laws enacted prior to, and repealed by, the Act of 1877. Had the saving clause

not been added, such cities and towns might have gone out of existence, as legal entities, for it has been held that:

" 'Dissolution may be effected by the repeal of the general law under which the community has assumed the municipal charter or organization.' 28 Cyc. 255.

"It was therefore provided, in the saving clause, that 'the existence' of such cities and towns 'shall not be affected' by the new act. The remaining part of the saving clause carries the same idea. The effect of a dissolution of a municipal corporation would be to destroy its powers and duties, and hence the provision in the saving clause in question that neither 'the powers or duties' of such towns shall be 'changed or abridged.' It has frequently been held that a saving clause 'should be strictly construed so as not to include anything not fairly within its terms.' 36 Cyc. 1164, and note 69. There is nothing in the section in question which shows an intent on the part of the Legislature to exempt such cities and towns from the operation of any statute relating to the classification of municipal corporations. The views above expressed are in harmony with the decision of this court in *People v. Keeling,* 4 Colo. 129, where it was held, in effect, that all cities and towns incorporated under general laws were subject to that part of the Act of 1877 which relates to the election of municipal officers, notwithstanding the proviso or saving clause in question."

 Having thus determined that Central City is not an independent kingdom unto itself, but on the contrary is a part of the sovereign state of Colorado, our next problem is to determine what is the applicable law governing appeals from a municipal or police court. Article VI, section 28 of the Constitution of Colorado provides as follows:

"All laws relating to courts shall be general and of uniform operation throughout the state; and the organization, jurisdiction, powers, proceedings and practice of

all the courts of the same class or grade, so far as regulated by law, and the force and effect of the proceedings, judgments and decrees of such courts severally shall be uniform."

It was in the light of the foregoing constitutional provision that the general assembly in 1951 enacted that which appears as C.R.S. '53, 139-36-1 to 16, and this statute specifically provides that a defendant may appeal any judgment of a municipal court or a police court "to the county court of the county in which such municipal court [or police court] is located." Article VI, section 28 of the Colorado Constitution declares that the foregoing statute is to be given "general and . . . . uniform operation throughout the state." All of which means that in Central City persons such as the several defendants in the instant proceeding who were adjudged to be in violation of a municipal ordinance may and should appeal the judgments entered against them to the county court in and for Gilpin County. The territorial charter notwithstanding — the defendants therefore had no right to appeal such judgments to the district court, but could only appeal to the county court.

Central City in urging that these defendants should have appealed to the district court, and not the county court, relies heavily on *Huer v. People,* 14 Colo. 71, 23 Pac. 323. In that case it was said that the provisions of the territorial charter of the City of Central stand "unless inconsistent with the constitution." As already noted, the provision in the charter providing for appeals from the police court to the district court is "inconsistent" with Article VI, section 28 of the Constitution of Colorado providing that "all laws relating to courts shall be general and of uniform operation throughout the state." Be that as it may, to the extent that our determination in the instant case is in conflict with *Huer v. People, supra,* that case is overruled.

Having determined that the defendants in error properly perfected their appeal from the judgment of the

police court of Central City to the county court in and for the County of Gilpin, we next turn our attention to the holding of the trial court that the ordinance under consideration is invalid.

■ The territorial charter of Central City provides that the city council shall have the power to license and tax such divers businesses as taverns, ordinaries, merchants, retailers, theatricals and other exhibitions, shows and amusements. In *City of Central v. Axton, supra,* it was determined that under its charter Central City was empowered to impose a tax on taverns and accordingly it was authorized to impose an occupational tax on Axton's business. Hence, the authority to tax Axton's business has already been resolved and this determination also negates Juannelle Cohen's contention that insofar as her tavern and restaurant business is concerned she is not subject to the same occupational tax.

■ The Steens operate a snack bar and hamburger emporium and we now hold that the charter authorization to license and tax ordinaries is broad enough to authorize an occupational tax on the Steens' business activity. A detailed dissertation as to the etymological meaning of an "ordinary" is not necessary. Suffice it to say, an ordinary, according to Webster, is a place where meals are served, which we hold to be broad enough to cover the business activity carried on by the Steens.

■ Faye Tyson conducts a guided tour of a gold mine and we further hold that the provision of the territorial charter of Central City that the City Council is empowered to license and tax "theatrical and other exhibitions, shows and amusements" is broad enough to authorize the imposition of an occupational tax on Faye Tyson in her business of conducting guided tours through a gold mine for a monetary fee.

■ However, the effort of Central City to impose an additional occupation tax upon Faye Tyson as regards the conduct of her curio business is invalid as being

discriminatory in the extreme. The ordinance in question provides that if more than 50% of the merchandise offered for sale by a retailer consists of curios, souvenirs and novelties manufactured *outside* of Gilpin County the license fee shall be $100; whereas if more than 50% of such merchandise offered for sale is manufactured *in* Gilpin County the fee is only $50. This is patently discriminatory and hence sections E and F or Ordinance No. 133 must fall. In this regard, see *Houston v. Kirschwing*, 117 Colo. 92, 184 P.2d 487 and *Moffitt v. City of Pueblo*, 55 Colo. 112, 133 Pac. 754.

Juannelle Cohen, in addition to operating a tavern and restaurant, also runs a rooming house and Central City attempted to impose an additional occupational tax on this particular business activity. Ordinance No. 133 clearly purports to impose an occupational tax on those "maintaining a hotel, motel or rooming house." In our view, however, the territorial charter of Central City does *not* authorize the council to impose such a tax. At least our attention has not been directed to any provision of the charter which would empower the city council to so tax. Hence, we now hold that under its territorial charter the city council of Central City does not have the authority to impose an occupational tax on one who maintains a rooming house. It should be noted, parenthetically, that Ordinance No. 133 includes a severability clause which provides that should any portion or portions of the Ordinance be found unconstitutional, the remaining portions thereof shall remain in full force and effect.

The remaining arguments advanced by the defendants in error as to why the ordinance under consideration is invalid because of alleged unconstitutionality have on numerous prior occasions been considered and rejected by this court. No good purpose would be served by once again covering this same ground, but for our general thinking in this regard see, for example, *Englewood v. Wright,* 147 Colo. 537, 364 P.2d 569; *Ping v. Cortez,*

139 Colo. 575, 342 P.2d 657; *Jackson v. Glenwood Springs,* 122 Colo. 323, 221 P.2d 1083; and *Post v. Grand Junction,* 118 Colo. 434, 195 P.2d 958.

■ Finally, the defendants in error assert that they are not subject to the tax because of the failure of Central City to comply with a charter provision concerning publication of notice of assessment. Article VIII, section 20 of the territorial charter of Central City provides as follows:

"The marshal shall be collector, or in the case of his absence or disability, such person as the council shall appoint in his stead shall be the collector of taxes, and before proceeding to collect the same shall give twenty days' notice of the assessment and levy of the tax and the rate thereof, in general terms, with a general description of the property in a newspaper printed in the city."

It is conceded that there was no compliance, or even attempt to comply, by Central City with the aforementioned proviso. Rather, Central City contends that this particular provision of the charter has no applicability to an occupational or business tax, and that by the language used it obviously applies only to a tax on property. With this contention we are in accord. The charter provision uses such words as "assessment" and "levy" and "rate"; and then concludes with the proviso that a "general description of the property" shall be contained in the published notice. All of which convinces us that this particular section of the territorial charter has no application to the instant controversy, which does not involve a tax on property — but an occupational or business tax.

The judgment is reversed and the cause remanded with direction that further proceedings be consonant with the views herein expressed. In other words as regards Axton, Tyson, the Steens and Cohen, the trial court shall determine the amount of occupational or business tax owed by each and shall then enter appro-

priate judgment therefor. As previously indicated, the trial court should either grant the Skagerbergs' motion to dismiss their appeal and issue a procedendo, or grant their motion to confess judgment.